Addie Rohn *et al.*

*v.*

Ann Harris *et al.*

*Filed at Springfield October 31, 1889.*

1. PARTITION—*ferry franchise*—*considered as in the nature of real estate.* Strictly speaking, a ferry franchise is not real estate, but it partakes so far of the nature of real estate that it may be partitioned in the same manner as real estate.

2. SAME—*ferry landings, as a part of the franchise.* A ferry franchise, or right to cross a river and receive tolls, is so connected with the land used for the landings as to be regarded as a part of the land, for the purpose of being partitioned.

3. SAME—*prerequisites to an order of sale.* The appointment of commissioners to make partition of real estate, and their report, are essential to the entry of a decree of sale, whether the proceeding is by petition under the statute, or by bill in chancery, and a decree of sale without such precedent step will be reversed.

4. DIVESTING A VESTED RIGHT—*constitutional law.* The owner of an undivided half of a ferry and ferry franchise bought the life estate of one in the other undivided half, and afterward transferred his title and interest to a third person. This transfer, by an act of the General Assembly, was confirmed, and the title in such third person declared to

be absolute and perfect, with full power to sell and convey: *Held,* that the act could not affect the rights of the remainder-man in the undivided half, but merely confirmed such rights as the purchaser had acquired by his purchase, and no more.

5. LIMITATIONS—*adverse possession essential—and herein, of tenants in common.* In order that the Statute of Limitations shall bar an action by the true owner of real estate, the possession of the defendant must have been adverse. The possession of a tenant in common for more than seven years, under color of title and the payment of all taxes, will not constitute a bar, unless such possession was adverse for the period of seven years.

6. SAME—*when the statute will begin to run—as against a reversioner or remainder-man.* The Statute of Limitations does not run against a reversioner or remainder-man during the existence of the prior estate, for the reason that during that time the reversioner or remainder-man has no right of entry.

APPEAL from the Circuit Court of Cass county; the Hon. CYRUS EPLER, Judge, presiding.

This was a bill for partition, brought by Ann Harris and Mary Frances Byers, in which they claim the undivided one-half of the ferry crossing the Illinois river opposite the town of Beardstown, Cass county, with all and singular the hereditaments and appurtenances thereto belonging, including all ferry landings belonging to the same situated both in Cass and Schuyler counties; also all boats, tackle and property belonging thereto, and the franchise thereof. The complainants claim title to an undivided one-half of the property as devisees of Edward Tull, who died in 1842.

It appears from the evidence contained in the record, that the land on which the ferry has its landings at Beardstown, was entered in 1827, by Thomas Beard and E. C. March, who laid out Beardstown in the north fractional half of section 15, at that time in Morgan but now in Cass county. Prior to 1828 Beard had established a ferry over the Illinois river where Beardstown now is. The town was laid out in 1829, and the ferry was duly licensed and the license paid by Beard. From 1837 to 1865 the ferry was duly licensed to Beard and his

grantees by the commissioners of Cass county, and from 1865 till now by the city of Beardstown, and the license fee paid to that city. The owners of the boat landed on the lands above described, and claimed the right to do so since the ferry was established. The usual places of landing were on an unplatted piece of ground and on a public street of said city. Beard was the sole owner of said boat up to September 8, 1840, when, for the expressed consideration of $3500, his wife joining in the deed, he conveyed to Edward Tull, the deed containing the following: "Do bargain, sell and quitclaim unto Edward Tull, his heirs and assigns forever, all right, title and interest in and to the undivided half of the ferry crossing the Illinois river opposite the town of Beardstown, Cass county, Illinois, with appurtenances thereto belonging." Upon making the purchase, Tull took possession of the ferry, and, with Beard, ran and operated it until he died, in 1842. Tull died testate, and by his will devised "the rents, profits and all his interest in said ferry to his wife, Mary Ann Tull, during her natural life, for the maintenance of herself and child or children, and their nurture and education," and after her decease "devises the same to his son, David Tull, or the proceeds thereof, if sold; and if any posthumous child or children be born, then said property, or the proceeds thereof, if sold, to be divided equally between said David and such child or children."

Tull left surviving a widow, Mary Ann, (who subsequently married David Clendening,) and one son, David Tull, and a posthumous child, Mary Frances, who afterwards married Abraham Byers. The widow, upon the death of her husband, went into the possession of the ferry, and so continued until May 19, 1849, when she sold and conveyed her life estate therein to Thomas Beard. From the date of this deed Beard operated the ferry until his death. He died testate, and by his will devised the ferry property, in trust, to his executors, one-half of the net proceeds of the ferry to be paid to his wife, and the balance of his property to be equally divided among his

six children, and upon the death of his wife the reversionary interest of the lands devised to her to be equally divided among his children. The will also contained this provision: That the interest in the ferry at Beardstown, and purchased by him of Mrs. M. A. Clendening, and contingent upon her life, "be insured, in continuation of the policy of insurance which he now has, and a sufficient sum be taken from the annual receipts of the ferry to pay the annual ·premiums before net proceeds be declared." On the 20th day of June, 1853, the executors of the estate of Beard, by deed of that date, conveyed to the six children of said Beard all the interest Thomas Beard had in the ferry, and the lands in Beardstown and in Schuyler county belonging to the ferry, with all boats belonging thereto.

It also appears that the interest acquired by the six heirs of Beard, by *mesne* conveyances, passed to the defendant in the bill, Addie Rohn. It also appears that Thomas Beard, and those claiming under him, have held possession of and operated the property from the time Mary Ann Clendening conveyed, in 1849, down to the present time. It also appears that Mary Ann Clendening died on the 17th day of August, 1886.

On the hearing, the circuit court found in favor of the complainants, and, without appointing commissioners to make partition, ordered and decreed that the property be sold. To reverse this decree the defendant in the bill appealed.

Messrs. MORRISON & WHITLOCK, for the appellants:

We insist that a ferry is but a franchise, and is in no respect real property, and, as such, subject to a technical partition. A ferry right in no respect depends upon title to the lands used. *Mills* v. *St. Clair County,* 3 Scam. 53; *Trustees of Schools* v. *Tatman,* 13 Ill. 27; *Lombard* v. *Cheever,* 3 Gilm. 470; *Gear* v. *Bullerdick,* 34 Ill. 75; *Mills* v. *St. Clair,* 8 How. 579.

A deed by the tenant for life may operate so as to defeat the estate of the reversioner. *Safford* v. *Stubb,* 117 Ill. 389.

The Statute of Limitations is a bar to the relief sought.

Messrs. Pollard & Phillips, for the appellees:

The right to operate a public ferry is a franchise, and an estate in such a franchise and an estate in land rest upon the same principles. *Dundy* v. *Chambers,* 23 Ill. 369; *Bridge Co.* v. *Lonergan,* 91 id. 508; *Town of Golconda* v. *Field,* 108 id. 419.

This ferry was established prior to the year 1828, under or recognized by the act of 1827,—Laws of Illinois, 1826-1827, p. 220,—and was operated for nearly forty years before the passage of the act of 1867, from which a grant would be presumed. A grant may be presumed after twenty years' possession. *Mills* v. *St. Clair County,* 3 Scam. 53.

The cases cited clearly show that a ferry franchise is in all respects treated as real estate by the Supreme Court of this State. If not land itself, it is a hereditament, which comes within the definition of real estate, and is within the terms of the Statute of Partition, and is conveyed and inherited in all respects like land.

The act of February, 1867, under which appellants claim, did not affect the rights of appellees. All that it purported to do was to confirm in Jones and Thompson the rights they had acquired in the ferry by their purchase from Nancy Beard. It in fact recognized the existence of the old franchise. (*Town of Golconda* v. *Field,* 108 Ill. 419.) It does not pretend to confirm rights acquired from others. Nor does it, by its language, take away the rights of appellees, and their rights can not be affected by it without their consent.

The appellees were tenants in common with appellants, and those under whom they claim, with the right to enter into possession on the termination of the life estate, and if any additional rights were conferred by that act, they inured to the benefit of appellees as well as appellants. One tenant in common can not acquire an outstanding title or incumbrance on the joint estate, and use it for his exclusive benefit against his co-tenant. The purchase inures to the common benefit,

34—130 Ill.

and the purchaser is entitled to contribution. 4 Kent's Com. p. 370, note 6.

It was not in the power of the legislature to take the property of appellees in the old franchise, and confer it upon Jones and Thompson. *Mills* v. *St. Clair County,* 2 Gilm. 199.

The possession of a tenant for life is not adverse to the estate of the remainder man, and the Statute of Limitations does not begin to run against the remainder-man until the death of the life tenant. *Jackson* v. *Shoomater,* 4 Johns. 590; *Keith* v. *Keith,* 80 Mo. 125; *Carr* v. *Dings,* 54 id. 95; *Roberts* v. *Nelson,* 86 id. 21.

Lands, etc., may be partitioned under the statute. Starr & Curtis Stat. chap. 106, p. 1791, sec. 1.

Mr. Justice Craig delivered the opinion of the Court:

It is first claimed that a ferry is but a franchise, and is in no respect real property, and a bill for partition will not lie. The privilege of establishing a ferry and taking tolls for the use of the same is a franchise. (3 Kent, 458.) The same author says (459): "An estate in such a franchise and an estate in land rest upon the same principle, being equally grants of a right or privilege for an adequate consideration." In *Dundy* v. *Chambers,* 23 Ill. 369, the question arose whether a ferry franchise is embraced within and governed by the Conveyance act, or whether it was to be regarded as personal chattels in its sale and transfer, and the court held that a ferry franchise could only be transferred in accordance with the provisions of the statute in reference to the conveyance of real estate. Strictly speaking, it may be conceded that a ferry franchise is not real estate, but it partakes so far of the nature of real estate that we are inclined to hold that it may be partitioned in the same manner as real property. The land on each side of the river where the boats landed belonged to and was a part of the ferry, and no question can arise as to the jurisdiction of the court to award a partition of the land;

and the franchise to cross the river and receive tolls was so connected with the land that it may, for the purpose of this proceeding, be regarded as a part thereof.

It is also claimed that whatever rights complainants had in the property are barred by the Statute of Limitations. It may be true that defendants' grantees, Jones and Thompson, held possession of the property under color of title, and paid all taxes for more than seven years; but the bar of the Statute of Limitations can not be invoked to defeat the title of the complainants, under the facts of this case, on the ground that the possession was not adverse. It will be remembered that Edward Tull devised his undivided half of the ferry to his wife, Mary Ann, for life, while the remainder in fee passed to complainants. Mary Ann sold and conveyed this life estate to Beard in 1849. Beard held under this title until his death, and Jones and Thompson, who subsequently acquired Beard's title, held under the same title, and the defendants occupy under the same title. The various deeds and wills were upon record, so that each purchaser had notice of the title under which he occupied the property. Until the termination of the life estate by the death of Mary Ann Tull, which did not occur until 1886, the complainants, as remainder-men, had no right of entry, as they had no right to the possession until the death of the life tenant, and until the death of the life tenant the statute could not begin to run. It is a plain proposition, as held in *Higgins* v. *Crosby*, 40 Ill. 260, that the statute does not run against a reversioner or remainder-man during the existence of the prior estate, because during that time he has no right of entry.

By an act of the General Assembly of the State of Illinois, approved February 26, 1867, the transfer of the ferry property from Beard to Jones and Thompson was confirmed, and the title of Jones and Thompson in the same was declared to be absolute and perfect, with full power to sell and convey, which act took effect from its passage. This act could not affect

complainants' title.   It merely confirmed in Jones and Thompson such rights as they had acquired under their purchase. The legislature had no power to divest complainants' title, if an attempt had been made to do so, but the legislature did not undertake to divest complainants' title.   We do not therefore regard this act as having any particular bearing on the rights of the parties.

It appears, however, from an examination of the decree, that the court decreed a sale of the property without appointing commissioners to divide it, as required by the statute, and it is claimed that this action of the court was not erroneous, because this was a proceeding in chancery, and not a petition for partition under the statute.   Section 1, of chapter 106, entitled "Partition," provides, that "where land, tenements or hereditaments are held in joint tenancy, tenancy in common or co-parcenary, * * * any one or more of the persons interested therein may compel a partition thereof by bill in chancery, as heretofore, or by petition in the circuit court of the proper county."   Section 16 declares, that "the court, when it shall order a partition of any premises to be made under the provisions of this act, shall appoint three commissioners, not connected with any of the parties, * * * to make partition of the premises."   Section 17 provides for an oath, and section 18 defines the duties, and section 19 provides for a report.   As before observed, section 1 of the statute provides that the proceeding may be by bill in chancery or by petition under the statute.   It would therefore seem that either mode which might be resorted to would fall within the provisions of the statute, and if so, section 16 in plain terms requires the appointment of commissioners.   We are therefore inclined to hold, that whether the proceeding may be by bill or petition, in either event the statute requires the court to appoint commissioners.

As the court failed to observe this requirement of the law, the decree will be reversed and the cause remanded.

*Decree reversed.*