WHEELER & WILSON MANUFACTURING COMPANY, PLAINTIFF AND DEFENDANT IN ERROR, v. CHARLES S. BROOKFIELD, TRADING AS CENTRAL STORAGE COMPANY, DEFENDANT AND PLAINTIFF IN ERROR.

Submitted March 22, 1904—Decided June 20, 1904.

1. A warehouseman is not required to deliver property stored with him and for which he has issued a warehouse receipt, pursuant to statute (*Gen. Stat., p.* 3746), merely upon a written demand being made upon him therefor by some person other than the receipt holder, who claims to be the owner thereof.

2. It being a criminal offence, by the statute, for a warehouseman to deliver property, for which he has issued a warehouse receipt, to any other person than the receipt holder upon the surrender and cancellation of such receipt, unless the property is so delivered through a removal thereof by operation of law, the warehouseman cannot be held liable in a suit in trover for the value of the property, if he shall deliver it to the receipt holder, after a written demand be made upon him by one claiming to be the owner, but before the property has been removed from his custody by operation of law.

3. The statute casting a duty upon the warehouseman, under a penalty, to deliver the property to the receipt holder upon surrender and cancellation of the warehouse receipt, unless it shall have been removed from his custody by operation of law, it will protect the warehouseman from an action for damages by a mere claimant, if, after such claim, the warehouseman complies with the statute and delivers the property to the receipt holder while still under the statutory duty so to do. It is against the policy of the law to hold a person liable in damages for not complying with a demand or doing an act which, if complied with or done, would be a criminal offence.

4. The warehouseman, under our statute, can only excuse or justify a refusal to deliver goods to the holder of the warehouse receipt, upon its surrender and cancellation, by showing that the property has been removed by operation of law. He will not be permitted, as against the receipt holder, to set up title in himself or any third party.

On error to the Supreme Court. . For opinion of the Supreme Court see 39 *Vroom* 478.

For the plaintiff in error, *William C. Jones.*

For the defendant in error, *Frederick A. Rex.*

The opinion of the court was delivered by

FORT, J. The defendant in this action is a warehouseman. He conducts his business under the name of the "Central Storage Company." On November 1st, 1901, one Ida Gordon stored with him a Wheeler & Wilson sewing machine, taking a warehouse receipt therefor, pursuant to statute. *Gen. Stat., p.* 3746.

On November 30th, 1901, the plaintiff served a formal written demand upon the defendant for the delivery to it of the machine in question, as follows:

"CAMDEN, N. J., Nov. 30, 1901.
'To *Central Storage Co., 811 Newton Ave.:*

"Demand is hereby made upon you that you deliver up to us forthwith the following personal property withheld by you from us, and which we are entitled to the possession of by reason of the lease executed to us by Mrs. Ida Gordon, viz., one Wheeler & Wilson sewing machine, No. 2547729.

"Said property belongs to us, and in case of your failure to deliver up the same to us forthwith legal action will be taken against you.

"By WHEELER & WILSON MFG. CO."

After the service of this demand, Mrs. Gordon presented her receipt and the defendant, upon surrender thereof, delivered up to her the machine.

Thereupon the plaintiff brought this action in trover, alleging a conversion by the defendant. The District Court gave judgment for the defendant. On *certiorari* the Supreme Court reversed the District Court.

It appeared that Ida Gordon had taken the machine from the plaintiff under a written agreement, dated March 28th, 1901, by the terms of which it was stated that it was a "contract of renting only and not a sale." Mrs. Gordon was to

pay certain monthly installments for the use of the machine for a period of fifteen months, and upon the fulfillment of the agreement and the payment of one dollar the machine was to be hers.

By the agreement it was further provided: (1) That the machine was not to be removed from 1121 Penn street, her present residence, without the consent, in writing, of the plaintiff; (2) that she was to be the agent of the plaintiff in holding and keeping possession of the machine; (3) that she would deliver up the possession of the same to the plaintiff on demand; and (4) that the plaintiff would not demand a return of the machine so long as it was properly kept at the place agreed upon and so long as the rent was paid pursuant to the agreement.

Then follows this general clause: "Nothing in this agreement contained and no payment of money pursuant thereto, excepting the payment of the purchase-money, as above provided, shall in anywise vest or be understood or construed to vest in the party of the second part any title, legal or equitable, to said machine, or any property therein for any term whatever, or shall prevent or hinder the party of the first part from reclaiming possession of said machine whenever the party of the second part fails to pay the rent above stipulated to be paid."

This agreement was not recorded as provided by our statute relating to conditional sales of personal property.

It was conceded that default had been made in the payments as agreed by Mrs. Gordon under the agreement, and that the plaintiff, at the time that the machine was stored with the defendant and the warehouse receipt given therefor, was entitled to demand the machine of Mrs. Gordon and retake it into its possession, but that, as a matter of fact, no such demand was actually made upon her by the plaintiff before the institution of this suit.

Two defences are made, either of which would have been sufficient. Both, we think, are good.

Our statute entitled "An act to prevent the issue of false

receipts and to punish fraudulent transfers of property by warehousemen, wharfingers and others, and to provide for the transfer of merchandise receipts and other vouchers by endorsement," approved March 11th, 1881, imposes very strict obligations upon the warehouseman and severe penalties for the violation of the act.    *Gen. Stat., p.* 3746.    By the statute it is expressly enacted that the warehouseman cannot (1) give a receipt unless the goods are actually in his warehouse at the time the receipt is given; (2) that he cannot issue a duplicate receipt except he stamp upon the face of the receipt the word "duplicate;" (3) that he cannot sell, or encumber, ship or transfer, or in any manner remove beyond his immediate control any goods, &c., for which a receipt shall have been given by him without the written consent of the person holding such receipt; (4) that warehouse receipts so given may be transferred unless marked "not negotiable," and the person holding the same shall be deemed and taken to be the owner of the goods, and no notice of such transfer need be given; (5) that no property shall be delivered except upon the surrender and cancellation of the original receipt or the endorsement thereon of the property delivered in case of a partial delivery; (6) that any person to whom the warehouse receipt may be transferred shall be deemed and taken to be the owner of the goods therein specified, without notice of such transfer, or an actual delivery or change of possession of the goods named therein.

By the common law the warehouseman delivered the goods at his peril, and this was true whether he delivered the same to the original bailor, after notice of another's claim, or to the one who thus claimed to be the owner thereof.    *Story Bailm.,* §§ 450, 582 (1856).

The bailee could not dispute the bailor's title, hence he could not set up ownership in himself, or, as some of the cases hold, in another.    3 *Am. & Eng. Encycl. L.* (*2d ed.*) 758, 759; *Hampton* v. *Swisher,* 1 *South.* \*66; *Hendricks* v. *Mount,* 2 *Id.* \*738; *Burton* v. *Wilkinson,* 18 *Vt.* 186; 46 *Am. Dec.* 145; *Holl* v. *Griffin,* 10 *Bing.* 246; 25 *E. C. L.* 135.

Some of the later cases, however, hold that he may justify

by proof of delivery, after demand, to one who was in fact the real owner. *Bliven* v. *Hudson River Railroad Co.,* 36 *N. Y.* 403, 406; *Western Trans. Co.* v. *Barber,* 56 *Id.* 544; *Wells* v. *American Express Co.,* 55 *Wis.* 23; 42 *Am. Rep.* 695; *The "Idaho,"* 93 *U. S.* 575.

The purpose of our statute evidently was to remedy the uncertainty and perils of the situation in which a warehouseman was placed at the common law when a third party gave him notice of a claim of ownership in the stored property, and to relieve the warehouseman from liability to a person thus giving notice if after such notice the warehouseman should redeliver the property to the bailor or other person holding the warehouse receipt for the same before the property was removed from his custody by operation of law.

By our statute the warehouseman cannot, without liability, deliver to any other than the bailor or his transferee. If the bailor or the transferee of his receipt for the bailment demands the property and surrenders the receipt, the warehouseman cannot defend against the receipt holder for damages for its conversion if he fail to deliver the property, upon the ground that he has delivered to another and justify under that other's title. He will not be permitted to dispute his bailor's title. He can only justify for a failure to redeliver to the bailor or his transferee upon the ground, to quote the statute, that "the property has been removed by operation of law." So long as he retains the control of the property and there has been no removal thereof by due process of law, he is required under the penalties fixed by the staute to redeliver to the bailor or his transferee as the holder of the warehouse receipt.

Warehouse receipts are by the statute negotiable, unless upon the face thereof appear the words "not negotiable." These receipts are transferred by the mere endorsement or delivery thereof, and the statute declares that "any person to whom the same may be transferred shall be deemed and taken to be the owner of the goods * * * named therein, without notice of such transfer, or an actual delivery or change of possession of the goods * * * named therein."

A receipt may be used to pledge the property, or for the sale thereof, and its delivery is symbolical delivery of the property named therein, and under the statute passes the possession thereof to the transferee as completely as an actual physical transfer of the property would be.

This provision of the statute makes warehouse receipts a convenient method of pledging personal property stored in warehouses as collateral for loans and the like, and is of great importance and security in mercantile transactions of very large concern. The sale and delivery of millions of bushels ·of grain stored in the great warehouses of the common carriers of this country, by the delivery of warehouse receipts, is of almost daily occurrence.

That no discretion to deliver to others than the holder of the warehouseman's receipt should exist in the warehouseman is·-essential to the proper conduct of these vast business interests. These receipts should import verity. .For the greater security of these receipts, once given, the statute enacts that no property shall be delivered ·by the warehouseman "except in surrender- and cancellation of said original receipt or the endorsement of such delivery thereon in case of partial delivery."

A warehouseman violating the statute in any respect which would include a delivery to another than the bailor or his transferee holding the receipt, is made guilty of a misdemeanor, with punishment by a fine of $1,000 or imprisonment for one year, or both.

He must deliver, therefore, on presentation of the receipt or violate the criminal law of the state, except he excuse himself in the manner pointed out in section· 8 of the statute, which reads as follows: "That so much of this act as forbids the delivery of property, except in surrender and cancellation of the original receipt, or the endorsement of such delivery thereon, in case of partial delivery, shall not apply to property removed by operation of law."

This is not an unreasonable statute. The actual owner of the property cannot complain that it deprives him of a

remedy to recover the same. The possession of personal property is *prima facie* evidence of ownership.

It would be against public policy to require warehousemen to violate the criminal law by making a delivery to one simply demanding property. It is consistent with public policy to require one out of possession and asserting a claim in property to proceed by due process of law to establish his right while it is still in the hands of the warehouseman, or otherwise to relieve the warehouseman from liability if he shall, in the meantime, deliver it to the receipt holder. Such statute does not deprive the owner of a complete remedy.

The remedy to such a claimant is to proceed against the warehouseman, by due process, to take into possession the property claimed, and to recover it by operation of law. Until it is so removed the warehouseman may deliver it to the receipt holder, and the statute will protect him from a suit for conversion.

Any other construction than this would make the condition of the warehouseman worse than at common law, in that it would impose upon him the penalties for the violation of the statute, in addition to the risk incident to a wrongful delivery, and multiplicity of suits.

We also think that the plaintiff in this case was not in a position to maintain this action, because, under the proof, by the agreement between Mrs. Gordon and it, it was clear that the right of possession in this machine was still in Mrs. Gordon, as no demand for its delivery to the plaintiff had been made of Mrs. Gordon at the time of the institution of this suit. The agreement was that upon default under the agreement the machine was to be delivered up on demand. It was at the option of the plaintiff to enforce the results flowing from the default, and it cannot be said to have done so until it elects to do so by making the demand under the agreement. It was admitted that no demand had been made of Mrs. Gordon. Hence the proof was that the right of possession in the machine was in Mrs. Gordon, and not in

the plaintiff, when the demand was made of the defendant for its delivery.

There will be a reversal of the Supreme Court and an affirmance of the judgment of the District Court.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN. 9.