STREET, Respondent, v. FARMERS' ELEVATOR COMPANY OF ELKTON, Appellant.

(149 N. W. 429.)

1. **Constitutional Law—Warehousemen—Due Process of Law—Invasion of Province of Judiciary—Warehouse Receipt, as Conclusive Evidence of Ownership—Statute.**

Pol. Code, Sec. 495, prohibiting a warehouseman, having issued a receipt for grain storage, from denying that the grain represented thereby is the property of the receiptee, and making such receipt, so far as the duties of the bailee are concerned, conclusive evidence that such receiptee is owner, is not invalid as an invasion of the province of the

judiciary, or as depriving the owner of property without due process, contrary to Const. U. S. Amend. 14, and Const. S. D. Art. 6, Sec. 2; since the statute proclaims a rule of substantive law, and not a rule of evidence, and merely enlarges the rules of contract of bailment by creating an estoppel, and in effect provides that one who has assumed a certain relation to another in regard to such property cannot question the title of such person to the property.

Smith, P. J., and McCoy, J., dissenting.

**2. Warehousemen—Public Business—Regulation of, Under Police Power.**

The business of a public warehouseman, being public in its nature, is a subject of regulation under the police power of the state.

(Opinion filed November 24, 1914.)

On rehearing. Former decision affirmed.

For former opinion, see 33 S. D. 601, 146 N. W. 1077.

*Cheever & Cheever, E. A. Berke,* and *H. Hanson,* for Appellant.

*Hall, Alexander & Purdy,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Pol. Code, Secs. 495, 494; Const., Art. 3, Sec. 21; 6 Encyc. 1050 (2nd Ed.); Missouri, Kansas & Texas Ry. Co. v. Simonson et al. (Kans. 1902) 68 Pac. 653; Vega S. S. Company v. Consolidated Elevator Co. (Minn. 1899) 77 N. W. 974; People v. Sponsler (Dak.) 46 N. W. 462.

Respondent cited:

3 Blackst. Com. 308; Coke Litt. 362-a; 9 Encyc. of Ev. 884; 4 Wigmore on Evidence, Sec. 2492; 1 Jones Commentaries on Evidence, Sec. 11-A; Wigmore, 2 Evidence, Secs. 1353, 1354, note; Cooley (Constitutional Limitations, Second Edition, 452).

(2) Under point two of the opinion, Appellant submitted that: There is no right, under the "police power," to legislate upon the doctrines of Agency, Bailments, or Evidence.

Respondent cited:

Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, affirming 69 Ill. 80; Budd v. New York, 143 U. S. 517, 36 L. Ed. 247, affirming People v. Budd, 117 N. Y. 1, and Brass v. North Dakota (Stoeser), 153 U. S. 391, 38 L. Ed. 757, affirming Stoeser v. Brass, 2 N. D. 482; State v. Central Lumber Co., 123 N. W. 504 (S. D.); Civ. Code, Sec. 1849; Peever Mercantile Co. v. State

Mutual Fire Ins. Co., 127 N. W. 559; Lawver v. Globe Mutual Ins. Co., 127 N. W. 615; Daggs v. Orient Insurance Co., 136 Mo. 382, 35 L. R. A. 227; Orient Ins. Co. v. Daggs, 172 U. S. 557, 43 L. Ed. 552; Yazou & M. V. R. Co. v. Bent, 47 Southern, 805, 22 L. R. A. (N. S.) 821.

WHITING, J.   This cause is before us upon rehearing.   Our former opinion is to be found in Street v. Elevator Co., 33 S. D. 601, 146 N. W. 1077.   The order granting the rehearing limits the further consideration of this appeal to the single question of the constitutionality of the Warehouse Act, when given the construction given to it by the majority of this court in our former opinion.

[1-2] The particular section of this act which appellant contends is unconstitutional, as construed by us, is section 495, P. C., which reads as follows:

"No person, association, firm or corporation, doing a grain warehouse or grain elevator business in this state, having issued a receipt for the storage of grain, as in this article provided, shall thereafter be permitted to deny that the grain represented thereby is the property of the person to whom such receipt was issued, or his assigns thereof, and such receipt shall be deemed and held, so far as the duties, liabilities and obligations of such bailee are concerned, conclusive evidence of the fact that the party to whom the same was issued, or his assigns thereof, is the owner of such grain and is the person entitled to make surrender of such receipt and receive the grain thereby promised to be delivered."

Appellant contends that said section 495 "violates two fundamental rules of constitutional law: First, that it violates what is commonly referred to as the fourteenth amendment to the Constitution of the United States, and section 2 of article 6 of the Constitution of this state, which is as follows: 'No person shall be deprived of life, liberty or property without due process of law.' Second, that this statute attempts to take away a fundamental right, and precludes a judicial inquiry into the liability of a warehouseman upon a storage receipt, by a conclusive presumption of fact."

As we read its brief, the sole basis for its contention is the claim that such section makes the storage receipt *conclusive evidence* of ownership of the grain, and therefore is an attempt, on

the part of the Legislature to deprive parties of a judicial determination of their rights.

We think appellants error lies in not looking back of the language used and determining the real effect of such section. It is true that, upon its face, it purports to prescribe a rule of evidence; but we think a careful consideration discloses that it proclaims a rule of substantive law and not a rule of evidence. As is said by Wigmore, at section 1353 of his work on Evidence:

"On the one hand, so far as a so-called rule of conclusive evidence is not a rule of evidence at all, but a rule of *substantive law,* it is clear that the Legislature is not infringing upon the prerogative of the judiciary."

This same thought is announced by Chamberlayne in his Modern Law of Evidence, wherein he says:

"*The phrase 'conclusive evidence'* may be used to state a proposition as to which the law of evidence has nothing whatever to do, though couched in the appropriate phraseology of the subject—the equivalence between two things prescribed by the substantive law. Thus the rule of substantive law that prescriptive user of a noncorporeal hereditament for a period of 20 years bars the right of action may be announced by saying that proof of such a user is *conclusive evidence* of a lost grant, or by the equivalent expression that a lost grant is conclusively presumed from the fact of such user."

Let us suppose a statute were enacted which provided that a bailee could never dispute the bailor's title to the thing bailed; that such a statute prescribed a rule of substantive law could and would not be questioned. Suppose a statute were enacted which provided that proof of the existence of the relation of bailor and bailee should be *conclusive evidence,* as against the bailee, that the bailor was the owner of the thing bailed; would not such a statute be, in its legal effect, exactly the same as the first supposed statute, and merely provide the same rule of substantive law—that a bailee could never dispute the bailor's title? Going one step further, so as to bring the supposed statute on all fours with the statute at bar, let us suppose a statute which provided that, in every case of bailment, the bailee should give to the bailor a written receipt for the goods bailed, and should further provide that this receipt should be *conclusive evidence,* as against the

bailee, of the bailor's title; would we not have in such a statute but a declaration of two rules of substantive law: (1) That a written receipt must be given; (2) that the bailee could not dispute the bailor's title? Is not the receipt but proof of the relation, and the relation the thing that conclusively precludes the questioning of the bailor's title? Let us take the first half of said section 495, down to the word "thereof"; would any one contend that this was other than a declaration of a rule of substantive law—a declaration of estoppel? Take the latter half of such section, and in place of the words "such receipt" substitute "proof of the relation of bailor and bailee," and in place of "same" substitute "receipt"; does not the substitution of these words render it perfectly apparent that the second half of the section as enacted is but a second declaration of the same rule of substantive law announced in the first half—that a public warehouseman is estopped from denying the title of his bailor to the thing bailed? To illustrate the distinction between a purported rule of evidence, which is but a declaration of a rule of substantive law, and a rule that is purely what it purports to be, we need but compare said section 495 to a supposed law which should provide that the receipt given by the warehouseman should be by him acknowledged and that a warehouseman's receipt duly acknowledged should be *conclusive evidence* of the execution of such receipt. In the one case, we have what amounts to a rule of substantive law, resting upon and flowing from the relation of the parties; in the other case, we have a pure and simple rule of evidence.

Wigmore, in treating of the subject of the constitutionality of statutes making testimony conclusive, in section 1353 of his great work, following the words we quoted above, distinguishes between those statutes that in fact do lay down a rule of conclusive evidence and those which announce a rule of substantive law, and he then, in the same section, notes that those statutes, which announce a rule of substantive law, may, for reasons entirely foreign to any question of evidence, be unconstitutional—as where a law, retroactive in its effect, would impair an obligation of contract, or where a law, purporting to make a tax deed conclusive evidence that all due proceedings had been had, would have the effect of taking property without due process, by declaring as unnecessary what the Constitution declares necessary. Then in section 1354

he distinguishes between statutes, such as those attempting to make tax deeds "conclusive evidence" of the validity of the tax proceedings, thus attempting to abolish the necessity of the existence of essential facts which are constitutionally required for a "taking by due process of law," and statutes which announce a rule of substantive law based upon the contractual relations of the parties, such as laws making "the terms of a bill of lading or of a policy of insurance * * * 'conclusive' in certain respects"; and this learned writer announces the test which, when applied, will demonstrate the constitutionality of the latter class of laws. He says that *"a statute which enlarges the rules of contract by creating an estoppel is constitutional."* It is because there is no contractual relation upon which estoppel can be based that statutes attempting to make tax deeds "conclusive evidence" of the validity of tax proceedings are unconstitutional. The statute before us is one which "enlarges the rules of contract by creating an estoppel," and is constitutional. This court has recognized the constitutionality of this class of legislation. In Peever Mer. Co. v. State Mut. Ins. Co., 25 S. D. 406, 127 N. W. 559, the question of the constitutionality of section 1849, C. C., was raised. This section reads:

"An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid."

Justice Smith, speaking for the court, said:

"We are not able to find any constitutional provision limiting the power of the legislative assembly in the enactment of such legislation."

A similar statute was before this court in Lawver v. Globe Ins. Co., 25 S. D. 549, 127 N. W. 615, and its provisions enforced. In upholding an insurance statute analogous to the statute before us, and in marking the distinction between what is and what is not constitutional, in a case wherein it was urged "that the statute takes away a fundamental right and precludes a judicial inquiry * * * by a conclusive presumption of fact," the same contention as is made in this case, the federal Supreme Court, in Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552, said:

"It makes no contract for the parties. In this it permits absolute freedom. It leaves them to fix the valuation of the property upon such prudence and inquiry as they choose. It only ascribes estoppel after this is done—estoppel, it must be observed, to the acts of the parties, and only to their acts in open and honest dealing. * * * It is one thing to attribute effect to the convention of parties entered into under the admonition of the law, and another thing to give to circumstances, maybe accidental, conclusive presumption, and proof to establish and force a result against property or liberty."

The question of the constitutionality of a statute purporting to make a bill of lading *conclusive evidence* of the facts stated therein was before the court in Yazoo & Miss. Val. Ry. Co. v. Bent & Co., 94 Miss. 681, 47 South. 805, 22 L. R. A. (N. S.) 821, and was most exhaustively discussed. That court in part said:

"In the case of Hazard v. Illinois C. R. Co., 67 Miss. 32, 7 South. 280, this court has already held that this statute was not a mere rule of evidence, but was designed to change the character and legal effect of the contract evidenced by the bill of lading. So we see, in the case above cited, we have a declaration by this court that, though the Legislature has spoken of this statute as furnishing conclusive evidence, etc., it is in truth not a statute merely enacting a rule of evidence, but making certain acts, voluntarily done by the railroad company, operate by way of estoppel to establish an incontrovertible contractual liability. In short, it precludes the railroad company from showing the untruth of that which they have asserted to be true in their bill of lading, when same reaches the hands of a bona fide holder for value. This statute creates a substantive rule of law, the end and aim of which is to promote justice, accuracy, and fairness. Mr. Wigmore, in his work on Evidence, in a note to be found in volume 2, p. 1667, says: 'Legislators frequently seem to believe that something is gained by labeling such statutes as rules of evidence.' But, when the effect of the statute is to create a rule of substantive law, the statute cannot be invalidated because of its label."

The court, in the Mississippi Case, reviewed the opinion in the case of Missouri, etc., v. Simonson, 64 Kan. 802, 68 Pac. 653, 57 L. R. A. 765, 91 Am. St. Rep. 248, and showed wherein the

majority opinion was unsound.  The Simonson Case is, we think, the only case to be found supporting appellant's contention, and holding unconstitutional a statute which merely enlarges some rule of contract by creating an estoppel.  The Simonson Case was decided by a majority of one.  Chief Justice Doster, in the dissenting opinion, said (the italicizing being ours) :

"A proposition in denial of the legislative power in the case stated is incomprehensible to me.  There is not a case in the books which in principle or in similarity of facts affords ground for the majority opinion.  The instances in which the exercise of the power in question has been attempted are not numerous. Nearly all of them were cases in which the Legislature sought to give tax deeds a conclusive effect to establish the substantive rightfulness of tax sale proceedings.  This class of cases was not adverted to by the majority, because of the obvious fact that in such cases the act from which it was sought to derive a conclusive effect was clearly the act of an adversary party, and the effort was to find those in which the Legislature had exceeded its authority by undertaking to found a presumption of conclusiveness upon the act of the party himself.  This could not be done.  There are no such cases; *that is, there are no cases in denial of the legislative right to found an estoppel upon the contract act of a party, and that—and it alone—is the case in hand.* * * *  I may well object to a law which from the hostile act of another seeks to raise against me a conclusive presumption, and I may well object to a law which seeks to found an estoppel against me upon some undesigned and easily explicable circumstance; but I can have no objection to a law which merely seeks to give to my own deliberate business engagement a conclusive and irrevocable effect."

An examination of the majority opinion in the Simonson Case discloses that every case cited in support of the court's conclusions was fundamentally different in its facts from the Simonson Case or the case at bar, in that not one of such cases was one where there were contractual relations upon which an estoppel could be based.

While a statute might be unconstitutional which attempted to make certain evidence conclusive as to the person in whom the title to property was vested, when the question of title was material, yet a statute would be constitutional which, though pur-

porting to prescribe a rule of conclusive evidence as to such title, yet in effect provides that a person who has assumed a certain relation to another in regard to such property cannot question the title of such person to such property. Section 495 belongs to this latter class, and such section is constitutional. The fact that this statute eliminates all exceptions to the rule that a bailee cannot dispute his bailor's title does not affect its constitutionality. It merely carries the estoppel a little further than courts were doing without the statute. No reason has been suggested why the Legislature might not eliminate one or all of the exceptions to the general rule, and when we consider that, by legislation, there have been provided remedies that relieve the bailee from the situations that gave rise to these exceptions, there certainly can exist no constitutional reason why, by legislation, such exceptions cannot be eliminated.

We must remember that the business of a public warehouseman, being public in its nature, is a special subject for regulation under the police power of the state. This business is as public in its nature as that of public carriers or of insurance companies. As said by Chief Justice Waite in Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, at a time when the business of storing grain was in its infancy, in speaking of such business:

"Certainly, if any business can be clothed 'with public interest and cease to be juris privati only,' this has been."

Another thing that should not be lost sight of is the fact that the rule of estoppel, as applied to a bailee's disputing his bailor's title, has gradually undergone a change from the days of the early common law to the present time, and this regardless of statute. Can it be said that the Legislature is not authorized, under the police power and upon grounds of public policy, to enact, as the law of today, that rule which, at one time, was the established law laid down by the courts? In Rolle's Abridgment, 606, tit. "Detinue," it is said:

"If the bailee of goods deliver them to him who has the right to them, he is, notwithstanding, chargeable to the bailor, who in truth has no right."

In Georgia we find a statute prescribing, as against carriers, a like rule of estoppel to that prescribed by said section 495. Section 2076, Code of 1873, reads:

"The carrier cannot dispute the title of the person delivering the goods to him by setting up adverse title in himself, or a title in third persons, *which is not being enforced against him.*"

This statute was enforced in Wallace v. Matthews, 39 Ga. 617, 99 Am. Dec. 473. In New Jersey there is a "warehouseman's" statute (3 Gen. St. p. 3747, p. 6) which, among other things, provides:

"No property shall be delivered except in surrender and cancellation of said original receipt or the indorsement of such delivery thereon, in case of partial delivery."

Another section of the same act provides that the above-quoted provision "shall not apply to property removed by operation of law." This statute was, in the case of Wheeler & Wilson Mfg. Co. v. Brookfield, 70 N. J. Law, 703, 58 Atl. 352, cited in our former opinion, held to be a good defense to a warehouseman who had refused to surrender the bailed property to a third person, and had then delivered it to the bailor, and this regardless of whether the bailor was really entitled to said property as against such third person. Speaking of the purpose and effect of such statute, the court, in the Brookfield Case, said:

"The purpose of our statute evidently was to remedy the uncertainty and perils of the situation in which a warehouseman was placed at the common law when a third party gave him notice of a claim of ownership in the stored property, and to relieve the warehouseman from liability to a person thus giving notice, if, after such notice, the warehouseman should redeliver the property to the bailor or other person holding the warehouse receipt for the same before the property was removed from his custody by operation of law. By our statute the warehouseman cannot, without liability, deliver to any other than the bailor or his transferee. If the bailor, or the transferee of his receipt for the bailment, demands the property and surrenders the receipt, the warehouseman cannot defend against the receipt holder for damages for its conversion, if he fail to deliver the property, upon the ground that he has delivered to another, and justify under that other's title. He will not be permitted to dispute his bailor's title. He can only justify for a failure to redeliver to the bailor or his transferee upon the ground, to quote the statute, that 'the property has been removed by operation of law.' "

It is strenuously contended that this section 495 has the effect of divesting the owner of his property without his consent and without his having an opportunity to be heard upon the question of ownership. There is absolutely nothing in this section or in the whole Warehouse Act to support such a contention, as the statute takes from the owner of the grain bailed neither any right nor any remedy; it does not affect him in the remotest degree. Neither does this statute prevent a bailee from being relievd from his contract, or from having the storage receipt reformed, when such contract was entered into through fraud or mistake; but when, under the Warehouse Act, a valid contract of bailment is entered into, while the true owner of the thing bailed is not affected thereby, the bailee, owing to the contractual relation which he has voluntarily assumed, is absolutely estopped from denying title in the bailor, and that regardless of where title is really vested.

In our former opinion herein we in some places made an inaccurate use of the term "receipt," where we should have substituted therefor that of which the receipt is but the evidence, to-wit, the relation of the parties as bailor and bailee; but we fully recognized that section 495, supra, declared a rule of substantive law when we propounded the question:

"Has the Public Warehouse Act prescribed another rule, so that a bailee under such act cannot voluntarily surrender the bailed property to the true owner thereof, and then interpose the fact of such surrender as a defense to a claim by the bailor?"
—and then answered such question by declaring that:

"The clear purpose in enacting this section was to forbid a bailee assuming, as between the party claiming under the receipt and a third party, to determine which is the rightful claimant of the property."

Appellant contends:

"That the act by which sections 494 and 495, Revised Political Code, originally became a part of the law of this state, to-wit, chapter 99, Laws 1890, and the act by which the Revised Political Code was adopted, each embraces more than one subject, which is not expressed in the title, in violation of article 3, § 21, of the Constitution."

While this question is not properly before us under the order

granting the rehearing, yet we would suggest that appellant's contention is disposed of by the decisions of this court in Wilson v. Surety Co., 31 S. D. 175, 140 N. W. 263; Schaller v. Grain Co., 32 S. D. 15, 141 N. W. 993.

The former decision of this court is affirmed.

McCOY, J. (dissenting). Under the construction of the Warehouse Act, in question in this case, contended for in the former dissenting opinion, I am of the view that the act is constitutional. Under the construction and effect given to the act by the majority opinion, I am of the view that it is unconstitutional and void, in so far as it attempts to make the bailor, as between the bailee and bailor, the conclusive owner of the grain. In this particular the act invades the province of the judiciary, or judicial branch of the government, thus depriving the courts of making judicial investigation of the facts as to ownership and awarding judgment according to the facts as revealed by such investigation, so as to, in effect, amount to a denial of due process of law. According to the general law of the land, when a bailee had accounted to, paid, and satisfied the true owner of the paramount title of the bailed property, on sound principles of equity and justice, and according to the dictates of good conscience and common honesty, that was considered, both in law and equity, as an accounting, in fact, to the bailor, and which accounting had the legal effect of extinguishing and satisfying the obligation of the bailee to make restitution of the subject of the bailment to the bailor. When the bailee has made such accounting to the paramount owner, such paramount owner steps out of the transaction as to his rights, and the bailee by equitable assignment and subrogation steps into the shoes of the paramount owner as to the rights and ownership of the bailed property.

In the case at bar the appellant, as defendant, when sued by the bailor for the value of the share of grain in question, interposed and alleged as a defense that it had paid and satisfied the true owner for the value of such grain. If these facts were true, as alleged by appellant, at the time this action was commenced, appellant was the equitable owner of the share of grain in question and subrogated to all the rights of the paramount owner thereof, and which in equity and good conscience would entitle appellant to a verdict and judgment in his favor. The effect of

the majority opinion is to deny and close the doors of the courts to judicial investigation of these facts as to appellant's ownership by reason of the facts alleged in the answer; in other words, according to the majority opinion, the Legislature, beforehand and in advance, without a trial and without investigation, had already decided, arbitrarily, that the bailor was the conclusive owner of such grain. I cannot believe that such is due process of law. It is taking property out of the hands of the rightful owner without his consent and giving it to one not entitled thereto. In 8 Cyc. 820, the general rule is thus stated:

"The Legislature has power to give greater effect to evidence than it possessed at common law, and in both civil and criminal proceedings it may declare what shall be prima facie evidence. On the other hand, it cannot prescribe what shall be conclusive evidence, as this would be an invasion of the province of the judiciary."

In the case of People v. Rose, 207 Ill. 352, 69 N. E. 762, the general principle announced in Cyc. was quoted with approval:

"An act of the Legislature, which transfers the property of one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his property without 'due process of law.'" Taylor v. Porter, 4 Hill (N. Y.) 140, 40 Am. Dec. 274; Rohn v. Harris, 130 Ill. 525, 22 N. E. 587; Hoke v. Henderson, 15 N. C. 1, 25 Am. Dec. 677.

In Taylor v. Porter the court quoted with approval from Justice Story:

"We know of no case in which a legislative act, to transfer the property of A. to B. without his consent, has ever been held a constitutional exercise of legislative power in any state in the Union. On the contrary, it has been constantly resisted, as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced."

In Hoke v. Henderson it was held that property rights cannot be transferred by legislative act from one person to another, even if the purpose of the enactment was lawful. In Dougherty v. Bethune, 7 Ga. 90, in a case where it was contended that an act of the Legislature made conclusive certain property rights in assignments of assets, the court said:

"The Legislature has no power to legislate the truth of facts [as to rights]. Whether the facts upon which rights depend are true or false is an inquiry for the courts to make, under legal forms; it belongs to the judicial department of the government. By the Constitution the legislative and judicial departments are distinct. A citizen is not estopped to deny, in the courts of the country, any mere fact which the Legislature may choose to recite. If he was, the government would be a despotism, and the Legislature might be a tyrant.'

In the legislative act in question in the case at bar the Legislature had no power to legislate the truth of and make conclusive the truth of the fact that the bailor was the owner of the property, as between the bailor and bailee. The property rights of the true owner and of the bailee, as the successor in interest of the true owner, could not thus be legislated away. Such fact of ownership is the subject of judicial investigation. In the case of M., K. & T. Ry. v. Simonson, 64 Kan. 802, 68 Pac. 653, 57 L. R. A. 765, 91 Am. St. Rep. 248, the court said:

"The theory on which all these cases proceed is that an act of the Legislature which undertakes to make a particular fact or matter in evidence involving the substantive right of the case conclusive upon the parties, and which precludes inquiry into the meritorious issues of the controversy, is an invasion of the judicial province and a denial of due process of law. The Legislature may regulate the form and the manner of use of the instruments of evidence, the media of proof; but it cannot preclude a party wholly from making his proof. A statute which declares what shall be taken as conclusive evidence of a fact is one which, of course, precludes investigation into the fact, and itself determines the matter in advance of all judicial inquiry. If such statutes can be upheld, there is then little use for courts, and small room indeed for the exercise of their functions."

To the general rule above announced there is a well-recognized exception in relation to estoppels. It seems to be conceded that the rule is well stated in Cooley's Const. Lims. 453-526:

"But there are fixed bounds to the power of the Legislature over this subject which cannot be exceeded. As to what shall be evidence and which party shall assume the burden of proof in civil cases, its authority is practically unrestricted; but it has no

power to establish rules which, under the pretense of regulating the presentation of evidence, go so far as altogether to preclude a party from establishing his rights. Except in those cases which fall within the familiar doctrine of estoppel at the common law, or other reasons resting upon like reasons, it would not, we apprehend, be in the power of the Legislature to declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it. In judicial investigations the law of the land requires an opportunity for trial, and there can be no trial if only one party is suffered to produce his proofs. A statute, therefore, which should make a tax deed conclusive evidence of a complete title and preclude the owner of the original title from showing its invalidity, would be void, because not being a law regulating evidence, but an unlawful confiscation of property."

The question then suggests itself: Does the statute in question *"fall within the familiar doctrine of estoppel at common law, or other reasons resting upon like reasons,"* or does it fall within the class of statutes attempting to legislate a *conclusive evidentiary fact as to the right of ownership of property* that would prevent a party from wholly making his proof as to the real facts, and which in effect would amount to a denial of the right to a trial on the issue of ownership, and an effectual denial of due process of law? The very express wording of the act itself would seem to indicate that it would fall within the latter class of statutes, for section 495 of the act reads:

"And such receipt shall be deemed * * * conclusive evidence of the fact that the party to whom * * * issued, * * * is the owner of such grain"

—and this regardless of what the true facts as to ownership of such grain might be. There has been some criticism of the soundness of the opinion of the Kansas court in M., K. & T. v. Simonson Case in Yazoo Ry. Co. v. Bent, 94 Miss. 681, 47 South. 805, 22 L. R. A. (N. S.) 821, on the ground that the particular statute under consideration in the Kansas case involved only purely contractual matter which was inherently and properly the subject of estoppel, and did not in any manner involve a conclusive rule of evidence as to the ownership of property in conflict with the state and federal Constitutions as to due process of law. How-

ever this may be, the soundness of the Kansas decision, as applied to a conclusive rule of evidence affecting constitutional property rights, so as to amount to a denial of due process of law, has never been questioned, but, on the contrary, has been approved by courts and law writers as embodying a sound legal doctrine. 8 Cyc. 821; People v. Rose, supra.

The statute under consideration in the Kansas case in substance provided that the *weights* expressed in. railway bills of lading, issued by railway companies for property shipped, *were conclusive,* as between the railway company and the shipper. The Kansas court held this statute unconstitutional, and that the railway company, when sued for loss or damage to the freight represented by the bill of lading, notwithstanding the conclusive effect of the statute, should be permitted to show the true weight of the property, as a basis of recovery in such actions. In the Mississippi case the court had under consideration a statute in substance providing that the statements contained in bills of lading issued by railway companies were conclusive evidence in favor of bona fide holders for value of such bills of lading. This statute was held constitutional and not to be in violation of the constitutional provisions relating to due process of law, but that this statute fell within the exceptions as to estoppels mentioned in the foregoing quotation . from Cooley on Constitutional Limitations, on the ground and upon the reasoning that the statute *did not involve the ownership of the property at all,* but related to a purely substantive contractual matter within the voluntary control of the parties and properly and inherently the subject of estoppel, that the railway company and the shipper by the bill of lading having voluntarily fixed the weights, and the amount of the freight charge made by the company being fixed and gauged by such weights, it would then be unjust and inequitable and a ground for estoppel to permit the railway company to say that the weights were other than as stated in the bill of lading, and that it was within the power of the Legislature to make such estoppel conclusive. The Mississippi case questions the soundness of the Kansas case on the ground that the Kansas statute also fell within the estoppel mentioned in Cooley.

In the case of Meyer .v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663, where the court had

under consideration a statute making certain acts of laborers or those who furnished materials, and who filed mechanics' liens therefor, conclusive evidence against the owner of the property, the Supreme Court of Minnesota, speaking through Mr. Justice Mitchell, said:

"In short, if a willful trespasser should go upon the land of another against his will or without his knowledge and erect a building on it, and the owner * * * did not institute * * * injunction against the trespasser, he would be conclusively deemed to have consented to the erection of the building, and his land be subject to a lien in favor of the trespasser. * * * The bare statement of such a proposition is sufficient. A man cannot be thus deprived of his property without his consent. The Legislature may doubtless establish rules of evidence, but to enact a law making evidence conclusive which is not so necessarily in and of itself, and thus preclude a party from showing the truth, would be nothing short of confiscation of property and a destruction of vested rights without due process of law."

Under the construction given to the Warehouse Act in this state, a trespassing thief who deposits grain in a public warehouse would thereby acquire a conclusive right of ownership to the grain deposited as against the bailee warehouseman who had become unfortunate enough by equitable assignment to stand in the shoes of the original and rightful owner by having paid him for his grain. I do not believe such right of property can thus be conclusively taken away from the bailee warehouseman, and thereby close his mouth and deprive him of the opportunity of showing the facts and the truth as to the real, just, and equitable ownership of such property. It is not due process of law. It is the same principle referred to in the Minnesota case as to trespassers acquiring a mechanic's lien against the owner of the property.

In speaking of conclusive rules of evidence created by legislative acts, Wigmore, in his work on Evidence (volume 2, §§ 1345-1354), in substance says: In such ways various constitutional provisions may be violated, but the legislative attempt is invalid, not because it deals with a *rule of evidence,* but because it deals with a *constitutional rule of property;* that a statute which deals with some rule of substantive law, such as creating a contractual estoppel, cannot be obnoxious to the present principle, as

where the terms of a bill of lading or a policy of insurance are declared to be conclusive in certain respects. On the other hand, a statute making a tax deed conclusive evidence of title is ineffectual as far as it virtually sanctions the divestiture of property whose owner is not at fault. The essential facts which are constitutionally required for a taking of due process of law cannot be abolished by the Legislature. So, too, any other statute dealing with *property* or *personal rights* is to be tested by the question whether the legislative act is constitutionally forbidden. The judicial function under the Constitution is to apply the law; to apply the law necessarily implies the determination of the facts; to determine facts necessarily involves investigation; to forbid investigation is to forbid the exercise of an indestructible judicial function; to make a rule of conclusive evidence compulsory upon the judiciary is to attempt an infringement upon their exclusive province.

My majority Associates cite section 1353, Wigmore, Ev., as substantiating their contention, and quote the following therefrom:

"On the one hand, so far as a so-called rule of conclusive evidence is not a rule of evidence at all, but a rule of *substantive law*, it is clear that the Legislature is not infringing upon the prerogative of the judiciary."

They have lost sight of the "on the other hand" contained in this section from Wigmore, and have failed to cite or quote the succeeding paragraph of the same section, which is as follows:

"It is true that such statutes may in some other aspect be invalid because of *express constitutional limitations* of legislative power as to some substantive right. For example, in either of the above instances, if the statute was enacted to govern notes and deeds made prior to its passage, it might violate the constitutional prohibition against laws impairing the obligation of contracts or taking property without due process of law. Again, a law providing that an assessor's or collector's deed of land sold for taxes shall be conclusive evidence that all due proceedings have been taken in the forfeiture may be obnoxious to the prohibition against taking property without due process; for the law in effect provides that the property may be taken although in fact due proceedings have not been had—in short, while purporting to make a rule

of evidence, it really makes a rule of property law by which certain acts are declared unnecessary which the Constitution has declared necessary. In such ways, various constitutional provisions may be violated; but the legislative attempt is invalid, not because it deals with a rule of evidence, but because it deals with a constitutional rule of property."

I take this section, *taken as a whole,* to mean that the constitutional provision as to due process of law cannot be violated either by a rule of *substantive law* or by a rule of *conclusive evidence.* While a legislative made rule of substantive law, in some instances, might not infringe upon the prerogative of the judiciary, still such act, nevertheless, would be invalid if it infringed upon the constitutional prohibition against taking property without due process of law. In other words, a legislative act, which deals with a constitutional rule of property so as to deny due process of law, is just as invalid as would be a legislative act making a conclusive rule of evidence which infringed upon the prerogative of the judiciary.

One of the contentions in this case is that the provision of section 495 of the Warehouse Act in question, which deems the storage receipt conclusive evidence as to the *ownership* of the stored grain, as applied to the circumstances of this case, is a taking of property without due process of law, in violation of the federal and state Constitutions. The illustration, *to show constitutional illegality,* used by both Judge Cooley and Prof. Wigmore, is that of a legislative act making a tax deed conclusive evidence of ownership, because it deals with a rule of *constitutional property right.* In further illustration of these rules as to conclusive evidence and substantive law, Wigmore, in section 1354, in substance, says: A statute which in reality deals with some rule of substantive law cannot be obnoxious to the principle that it infringes upon the province of the judiciary, although it may be obnoxious to some constitutional proviso which protects the rule of substantive law in question. Thus a statute which enlarges the rules of contracts by creating an estoppel is constitutional, as where the terms of a bill of lading or a policy of insurance are declared to be conclusive in certain respects; on the other hand, a statute making a tax deed conclusive evidence of ownership is ineffectual, so far as it sanctions the divestiture of property, as the essential

facts which are constitutionally required for a taking by due process of law cannot be abolished by the Legislature, although the unessential details are entirely within legislative control. So, too, any statute dealing with *property rights* is to be tested by the question whether any legislative alteration of these rights is constitutionally forbidden. It is most certainly true, as appears from the authorities, that contractual relations, such as grow out of bills of lading, or insurance policies, or other contracts, *in certain respects,* may be, by the Legislature, declared to be conclusive as estoppels, whether as a rule of evidence or a rule of substantive law, when the effect of the act is not to divest a party of his ownership of property without due process of law; but, whenever such act has the effect of divesting such owner of his property without his consent and without an opportunity of being heard upon the merits of the question of his ownership, it is not due process of law, and such act is consequently void, whether it be a rule of *conclusive evidence* or a rule of *substantive law.* Neither act is within the rule or principle that permits the Legislature to create estoppels, or conclusive rules of evidence, or substantive law *"in certain respects"* in relation to contractual rights.

The act in question on its face expressly purports to create a conclusive rule of evidence as to the *ownership* of property. There seems, however, to be some divergence of opinion as to whether such an act is in fact a rule of conclusive evidence or a matter of substantive law. When applied alone to the objection that the act infringes upon the province of the judicial branch of government, it might be material to determine whether or not the rule established by a legislative act was in fact a rule of evidence or a matter of substantive law; but where the objection is made that the legislative rule violates a *constitutional property right,* so as to amount to a denial of due process of law, it becomes immaterial whether the act is a "so-called rule of conclusive evidence" or "a rule of substantive law," as *such property right cannot be violated by either of such legislative rules.* The legislative act in question expressly purports upon its face to make a conclusive rule as to the *ownership of property.* In this very case the defendant, without its consent, and without an opportunity of being heard upon the merits, is *divested of its ownership* in the property by means of this legislative act. *Every existing reason*

*against the constitutionality of a statute that would make a tax deed conclusive evidence of ownership* of land sold for taxes *also* exists against a statute making the holder of a storage receipt the conclusive *owner* of the stored grain. The storage receipt would operate to divest title and ownership just as effectually as would the tax deed. The public officer who issued the tax deed is no more a public officer for the purposes of the deed than is the operator of the elevator for the purposes of the effect of the receipt. The statute in both cases, regardless of the facts, and without investigation, forces upon the parties the conclusive rule of ownership. There is no chance for the exercise of volition by the parties, and herein lies the vital distinction between statutes of the class here under consideration and the statutes in the Kansas and Mississippi cases. It cannot be said that the true owner, or his assignee, of property covered by a tax deed, knew what the law was, and should not have let his property be sold for taxes, if he did not desire to be bound by such deed, any more than it would be said that the warehouseman knew what the law was, and should not have issued the receipt, if he did not wish to become bound according to the statute. Neither can it be said that the warehouseman should not have become the equitable owner of the grain, *because there is no law forbidding him from so doing,* any more than there is a law against a person becoming the equitable owner of real estate covered by a tax deed. The conclusive effect given to a tax deed does not relate to such assignment, neither does the conclusive effect of a grain receipt relate to the question of such assignments.

I cannot believe that a law is valid which has the effect of taking property out of the hands of one justly entitled thereto and giving it to one clearly not entitled thereto, without even giving the one from whom it is thus taken an opportunity of being heard as to the facts of his ownership. The demurrer to the answer should have been overruled, and defendant given the opportunity to place before the trial court the evidence upon the merits as to its ownership of the grain in question.

SMITH, P. J., concurs in the views of Justice McCOY.