Robin McMACKEN, Plaintiff
and Appellant,

v.

STATE of South Dakota, Defendant,

and

Fritzel, Kroeger, Griffin & Berg, archi-
tects, Defendants and Appellees.

No. 13349.

Supreme Court of South Dakota.

Argued Oct. 1, 1981.

Decided May 26, 1982.

Rehearing Granted June 28, 1982.

Helen Driscoll, Vermillion, for plaintiff and appellant.

Stanley E. Siegel of Siegel, Barnett & Schutz, Aberdeen, for amicus curiae South Dakota Trial Lawyers' Ass'n; David R. Vrooman, Sioux Falls, and Terry N. Prendergast of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, on brief.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees Fritzel, Kroeger, Griffin & Berg; Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

MORGAN, Justice.

In this appeal, appellant seeks to have us hold SDCL 15–2–9 unconstitutional.[1] The South Dakota Code designates SDCL 15–2–9 as a "Limitation of action for deficiencies in construction of building." Essentially, the statute; (1) precludes any legal action for injuries proximately caused by deficiency in design, planning or construction of an improvement to real property brought against the designer, planner or constructor more than six years after substantial completion of such construction, (2) makes this defense unavailable to the owner or person in actual possession, and, (3) where an injury occurs in the sixth year, permits an action within one year after the date the injury occurred, but in no event, more than seven years after substantial completion.[2]

Appellant, Robin McMacken (McMacken), was a student at the University of South Dakota in Vermillion, residing at Norton Hall, a university dormitory. During her residency, she sustained serious personal injuries as a result of a fall down a stairwell in the dormitory. She brought suit, alleging that the stairwell railing was deficiently designed and constructed because its height was insufficient to provide her adequate protection. She sought damages from the State, as owner of the dormitory, and from the architectural firm (architects) who designed the structure.

The dormitory was substantially completed in 1964. The injury occurred on or about September 22, 1979, with suit commenced on September 16, 1980. Architects moved to dismiss because McMacken's action was not commenced within six years of Norton Hall's completion, as required by SDCL 15–

---

1. For our purposes here, SDCL 15–2–9 must be read in conjunction with SDCL 15–2–10 through 12 inclusive.

2. As originally enacted in 1966, the statute provided for ten and eleven-year periods. In 1978, the periods were shortened to their current duration.

2–9. Although both McMacken and the State resisted, the trial court granted architects' motion. Later, the trial court entered final judgment in conformity with SDCL 15–6–54(b). McMacken appealed, and we affirm.

Statutes of this type, usually referred to as "Builders' Statutes," have been enacted in a large number of jurisdictions. Apparently, these statutes were spawned by the extension of potential liability to the architectural profession and construction industry caused by removal of the privity of contract as a defense to tort claims.

> As in the case of a seller of chattels, the exceptions tended generally to swallow up the prevailing rule, until the analogy of *McPherson v. Buick Motor Company,* was persuasive and was finally accepted. It is now the almost universal rule that the contractor is liable to all those who may forseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done. This applies not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects and engineers. There may be liability for negligent design as well as for negligent construction.

Prosser on Torts, 4th ed., § 104, at 680–682. Many courts have considered numerous constitutional challenges to statutes like SDCL 15–2–9 and reached diverse results.[3] A review of these cases demonstrates that the lines of attack and decisions are varied.

Some are very persuasive, while others are merely conclusory. We are, however, left with a number of well-written and persuasive arguments pro and con on most of the issues we face today.

■■■ Since McMacken challenges the constitutionality of SDCL 15–2–9, she bears the burden of proving beyond a reasonable doubt that the statute violates a federal or state constitutional provision. A strong presumption in favor of the constitutionality of the statute exists and is rebutted when it appears clearly, palpably and plainly that the statute violates some provision of the South Dakota Constitution. *Matter of Certain Territorial Elec. Boundaries, etc.,* 281 N.W.2d 65, 69 (S.D.1979). On such challenges, we are unconcerned with the legislative wisdom behind SDCL 15–2–9, since we limit our review to the statute's constitutionality. *McDonald v. School Bd. of Yankton, etc.,* 246 N.W.2d 93, 96 (S.D.1976). McMacken assails the statute on three constitutional grounds: (1) equal protection and special privileges and immunities; (2) denial of due process; and (3) a defective relationship between its title and subject.

■■■ We first examine McMacken's equal protection argument. In essence, she contends that SDCL 15–2–9 violates her right to equal protection of the law by arbitrarily singling out one portion of the class of persons potentially liable for building defects and granting them immunity in contravention of the equal protection clause of the Fourteenth Amendment to the United States Constitution[4] and Art. III, § 23[5]

---

**3.** We refer the reader to the synopses of the various results that we have found in *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980), and Annot. 93 A.L.R.3d 1242 (1979). *See also O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980); *Anderson v. Wagner,* 402 So.2d 320 (Miss.1981); *Harmon v. Jessup Associates, Inc.,* 619 S.W.2d 522 (Tenn.1981). Moreover, although the separate statutes vary in wording, the distinctions are insignificant. *Phillips, supra,* at 824.

**4.** "... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall

any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

**5.** "The Legislature is prohibited from enacting any private or special laws in the following cases:

. . . .

9. Granting to an individual, association or corporation any special or exclusive privilege, immunity or franchise whatever.

. . . .

In all other cases where a general law can be applicable no special law shall be enacted."

and Art. VI, § 18[6] of the South Dakota Constitution. To resolve McMacken's challenge, we compare the reasoning of *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588 (1967), with that of *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). Both cases considered statutes similar to SDCL 15–2–9. *Freezer Storage* upheld the statute, while *Skinner* invalidated it.

The case of *Skinner v. Anderson, ibid.*, one of the earliest cases, is oft-cited by opinions invalidating similar statutes. There, the Illinois Supreme Court declared that, "of all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity." *Skinner v. Anderson*, 231 N.E.2d at 591. The court conceded that the constitution does not prohibit legislative classification, but noted that the classification must be reasonably related to the legislative purpose.

'That the statute operates uniformly upon all members of a class created as the beneficiaries of the act is not the sole test to be applied, but in order to avoid the constitutional inhibition . . . it must also appear that there is a sound basis, in reason and principle, for regarding the class of individuals as a distinct and separate class for the purpose of the particular legislation.'

*Id.*, at 591, quoting from *Phillips v. Browne*, 270 Ill. 450, 453, 110 N.E. 601, 603 (1915).

This court has applied a similar two-prong classification test in equal protection cases: (1) Whether the statute sets up arbitrary classifications among various persons subject to it, and (2) whether there is a rational relationship between the classification and some legitimate legislative purpose. *Morrill v. Wollman*, 271 N.W.2d 356, 358 (S.D.1978); *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975).

The Illinois Court in *Skinner* found the statute unconstitutional under the article of the Illinois Constitution prohibiting the legislature from enacting local or special laws in a vein similar to South Dakota Constitution, Art. III, § 23, but that court expressed no opinion on the other constitutional issues raised. The court noted,

The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And, so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted.

*Skinner v. Anderson*, 231 N.E.2d at 591. This argument is not as impelling in South Dakota, inasmuch as our legislature, by enactment of SDCL 15–2–12.1, has granted suppliers of materials and component parts of the improvements a similar period of liability.

The *Skinner* court also discussed the difference in the classification accorded by the Illinois statute to owners and architects:

It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

*Id.*, at 591.

In *Kallas Millwork Corporation v. Square D Company*, 66 Wis.2d 382, 225 N.W.2d 454,

---

**6.** "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations".

458 (1975), the Wisconsin Supreme Court, in holding the Wisconsin builders' statute unconstitutional, raised the question in this manner: "Whether there are any real differences to distinguish the favored class—those persons who perform and furnish the design, planning, supervision of construction, or construction of improvements to real property from other classes, such as materialmen, who are ignored by the statute, and owners and occupants who are specifically excepted." In *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548, 555 (Minn.1977), the Minnesota Court, after noting that ten of fifteen courts that had ruled on the constitutionality of the builders' statute had upheld their statutes, chose to adopt *Skinner* on the basis that the statute granted immunity from suit to a certain class of defendants without a reasonable basis for the classification.

Although both McMacken and the above cases raise appealing arguments, we find the responses in the case of *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978) more persuasive. Perhaps if *Freezer Storage* had been available to the Wisconsin and Minnesota Courts, they would not have been as adamant that a reasonable basis did not exist for the classification.

As to the distinction between builders and suppliers, the Pennsylvania Court said,

Suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and construction only in limited ways—actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts.... The legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers.

*Id.*, 382 A.2d at 719. Likewise, as to the distinction between builders and owners,

It is manifestly rational to adjust time periods for liability for acts performed according to the substantive scope of the liability involved. The scope of liability of the class of builders differs significantly from that of the class of owners. First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable. Landowners may be liable to others who come onto their land. Builders, however, may be liable both to the landowners and to others who use the land. Second, a builder may be liable for construction defects under various legal theories—contract, warranty, negligence, and perhaps strict liability in tort. Landowner liability for such defects, on the other hand, typically lies only in tort .... Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures and by regulating the number and type of persons entering the land and regulating the conditions of entry. The builder has no such control over his product after relinquishing it to the landowner. Landowner's liability is also controlled by the myriad of common law rules limiting liability to such classes as "undiscovered trespassers," "mere licensees" and so forth.... For any of these reasons the Legislature might rationally conclude that builders should remain liable for their mistakes for only 12 years after they complete construction, but that a landowner should remain liable for injuries caused on his land for as long as he is in possession.

*Ibid.*, at 718–19. Justice Roberts concluded for the Pennsylvania Court, "the 12-year limitation on builder's liability, whether wise or not, rests on real distinctions which exist in the world in which builders, suppliers and landowners operate." *Freezer Storage, Inc. v. Armstrong Cork Co.*, 382 A.2d at 720. *See also O'Brien v. Hazelet & Erdal*, 299 N.W.2d at 336; *Harmon v. Jessup Associates, Inc.*, 619 S.W.2d at 525.

The case of *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), cited in *Kallas Millwork, supra*, seems to be the only

United States Supreme Court decision relied on by those courts that have held builders' statutes unconstitutional. In that case, the United States Supreme Court, after reiterating the settled law that a classification that has some reasonable basis does not offend the equal protection clause of the Fourteenth Amendment, struck down as unreasonable a statute that required state licensure of any firm selling money orders in the state except certain named companies, including American Express Company. The singling out of one or more companies from its competitors is so patently opprobrious that it hardly seems necessary to point out the distinction from the instant case, which involves all builders. Accordingly, we find the *Doud* case unpersuasive authority in deciding the issue before us.

In *Behrns v. Burke*, 89 S.D. 96, 229 N.W.2d 86 (1975), we noted that the provisions of Art. VI, § 18 of the South Dakota Constitution demand a more stringent application of the classification test than the equal protection clause of the Fourteenth Amendment to the United States Constitution. After an exhaustive review of *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973), a California case that had started a trend of guest statute challenges, the *Behrns* Court made the following pertinent observations:

> We are inclined to agree that the guest statute is unreasonable. . . . Any law that allows one person to injure another . . . and escape liability is unreasonable. In fact, unreasonable may be too kind an expression.
>
> Again, however, this cannot be the issue before us. . . . What the California court is saying is that the guest statute is unreasonable social policy, and we agree. What constitutional examination requires is whether the classification bears a reasonable relation to the statutory purpose—whether the class encompasses

those persons who must be affected to produce the desired result and whether the statute will reasonably tend to produce the desired result. We are talking about the rational connection between the legislative means and the legislative ends, not the wisdom of any social policy embodied in those ends.

> . . . .
>
> . . . We sympathize with those who find the statute unjust, but we are bound to exercise judicial restraint (a great deal of it in this case) and not substitute our judgment and wisdom for that of the legislature.

*Ibid.*, 229 N.W.2d at 92–93.

In this case, McMacken argues strongly that it is unjust and unfair to grant immunity against her claim. On well-reasoned authority from other jurisdictions and the clear authority of our own decisions, we must conclude that we lack further discretion to review the legislative judgment. We must, therefore, uphold SDCL 15–9–2 against the assertion that it violates Art. III, § 23 and Art. VI, § 18 of the South Dakota Constitution and the equal protection clause of the Fourteenth Amendment to the United States Constitution.

We next examine McMacken's argument that the statute is unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution and Art. VI, §§ 2[7] and 20[8] of the South Dakota Constitution, because it bars an action before it has accrued. Under the facts in this case, SDCL 15–2–9 barred McMacken's right to sue on her cause of action a full nine years before the cause of action arose. McMacken urges that, unlike a traditional statute of limitations, which affords her a right to try her cause, SDCL 15–2–9 bars this right. This result, she argues, is an unlawful attempt to extinguish rights arbitrarily. *See Wilson v. Is-*

---

7. "No person shall be deprived of life, liberty or property without due process of law. The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union, or labor organization."

8. "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

*eminger*, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902). "Nothing could be more unreasonable or more certainly violative of constitutional prohibitions than to bar rights of action because of the lapse of time prior to their accrual, when they could not have been exercised." *Lamb v. Powder River Live Stock Co.*, 132 F. 434, 443 (8th Cir. 1904).

An early case overturning a builders' statute on a denial of due process is the decision of the Kentucky Supreme Court in *Saylor v. Hall*, 497 S.W.2d 218 (Ky.1973). That court, commenting on the fact that the builders' statute had been upheld in a number of other states, observed,

> [W]e have concluded that our sister states . . . have construed their state constitutions to be equivalent to the federal Constitution so far as legislative power to abolish existing common-law rights of action is concerned. Therefore, these state jurisdictions experience no difficulty in validating compulsory workmen's compensation laws and automobile guest-passenger statutes.

*Id.*, at 222. The Kentucky Court then went on to point out that the Kentucky Constitution prohibited the legislative branch from abolishing common-law rights of action for personal injuries or death caused by another's negligence.

The Florida Supreme Court relied on the *Saylor* decision and concluded that in Florida, as in Kentucky, the unique restriction imposed by their constitutional guarantee of a right of access to the courts makes it irrelevant that this "statute of repose" may be valid under state or federal due process or equal protection clauses. *Overland Const. Co., Inc. v. Sirmons*, 369 So.2d 572 (Fla.1979). A close reading of *Overland* indicates that there was no additional constitutional provision as in the Kentucky case, but rather a line of court authority that had prohibited legislators from abolishing common-law remedies without supplying alternative remedies.

In response to arguments like these, the Pennsylvania Court in *Freezer Storage* also upheld the Pennsylvania builders' statute

against a due process attack that relied on a constitutional provision which provided that "all courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law." The Pennsylvania Court made several cogent points, to which we subscribe:

> [N]o one "has a vested right in the continued existence of an immutable body of negligence law . . . . [T]he practical result of a [contrary] conclusion would be the stagnation of the law in the face of changing societal conditions." . . .

> . . . .

> This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain nonconstitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law.

*Freezer Storage, Inc. v. Armstrong Cork Co.*, 382 A.2d at 720–721.

■ This court has applied the due process provisions of Art. VI, § 2 of the South Dakota Constitution to the guest statute, which barred a cause of action by a guest without compensation against his host driver absent willful and wanton misconduct. In *Behrns v. Burke*, 229 N.W.2d at 88 n. 6, this court said,

> Due process, since *West Coast Hotel Company v. Parrish*, 1937, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, has, in the federal courts, ceased to be a tool for justifying judicial interference with legislative creation and dissolution of substantive rights. This court has long ago sustained statutes with reasoning bottomed on the substantive due process-procedural due process dichotomy. Citing *Street v. Farmers' Elevator Co.*, 1914, 34 S.D. 523, 149 N.W. 429[.]

In *Street,* a statute making a warehouse receipt for grain conclusive evidence of ownership of that grain as against the elevator was upheld against a due process attack. Responding to the argument that such a provision prevented the judicial determination of ownership and, therefore, violated due process, this court determined that the statute actually dealt with a substantive right—ownership of the grain—and was, therefore, a proper matter of legislative policy as opposed to a rule of evidence, a procedural matter. Here, the legislature has declared a substantive rule, the abeyance of a cause of action six years after substantial completion of an improvement to real property, a proper matter of legislative policy.

■ In *Behrns,* this court also said that the South Dakota Constitution Art. VI, § 20,

"... is a guarantee that 'for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy.'" *Simons v. Kidd,* 1949, 73 S.D. 41, 38 N.W.2d 883. The guest statute declares that injuries suffered by a guest because of a host's negligence are not caused by "'wrongs as are recognized by the law of the land.'"

*Ibid.,* at 88. "Where no right of action is given, however, or no remedy exists, under either the common law or some statute, those constitutional provisions create none." *Simons v. Kidd,* 73 S.D. 41, 38 N.W.2d 883, 886 (1949). Conversely, where a cause of action is implied or exists at common law without statutory abrogation, a plaintiff has a right to litigate and the courts will fashion a remedy. *Moberg v. Scott,* 38 S.D. 422, 161 N.W. 998, 999 (1917); *Swanson v. Ball,* 67 S.D. 161, 290 N.W. 482, 483 (1940); *Hoekstra v. Helgeland,* 78 S.D. 82, 98 N.W.2d 669 (1959).

■ A Connecticut guest statute was upheld by the United States Supreme Court in *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929), on the grounds that the constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object. Likewise, we conclude that the statutory abrogation of a cause of action before it has accrued does not violate McMacken's rights under Art. VI, §§ 2 and 20 of the South Dakota Constitution or the due process clause of the Fourteenth Amendment of the United States Constitution.

■ Finally, we examine McMacken's argument that the statute violates the proscription of Art. III, § 21 of the South Dakota Constitution which mandates that "no law shall embrace more than one subject, which shall be expressed in its title." McMacken urges that SDCL 15–2–9 contains more than one subject, and its title fails to cover both subjects.

We recently reviewed the application of this constitutional article in *South Dakota Ass'n., etc. v. State, etc.,* 280 N.W.2d 662 (S.D.1979). There, we reiterated the holding of this court in *State v. Morgan,* 2 S.D. 32, 48 N.W. 314 (1891), where we noted that the purpose of the provision was to: (1) prevent combining into one bill several diverse measures which have no common basis except, perhaps, their separate inability to receive a favorable vote on their own merits; (2) prevent the unintentional and unknowing passage of provisions inserted in a bill of which the title gives no intimation; and (3) fairly apprise the public of matters which are contained in the various bills and to prevent fraud or deception of the public as to matters being considered by the legislature. 280 N.W.2d at 665.

The provision creates two mandates. The first is that no law shall embrace more than one subject, the subject being defined as the public or private concern for which the law is enacted, and all provisions of the Act must relate directly to the same subject, have a natural connection, and not be foreign to the subject as stated in the title.[9] The second mandate is that the subject shall be expressed in the title. *South Dako-*

9. The subject of an act is the matter to which it relates, while the object, properly speaking, is its general aim or purpose. 82 C.J.S. Statutes § 217, p. 358.

*ta Ass'n., etc. v. State, etc.,* 280 N.W.2d at 665.

For the purpose of this discussion, we must, of necessity, examine the original statutory enactment, namely, Chapter 117 of the Session Laws of 1966. What the Code Commission has done to it, or the 1978 amendment, is not pertinent to this discussion. We look first to the question of whether the statute in fact embraces more than one subject. Boiled down to its essentials, the original statute provided that where injuries were caused by deficient construction or design a legal action to recover damages brought more than ten years after substantial completion of the construction does not exist.

McMacken argues that on the one hand it is a traditional statute of limitations during the first ten years (a procedural statute), while on the other, after ten years it becomes a statute abrograting her common-law rights (a substantive statute). What then is the subject of the statute, the public or private concern for which it was enacted? We hold that it is the limitation on the right to commence an action for damages in a specified class of cases. All provisions of the enactment clearly relate to the subject.

The original title "An Act relating to limitation on time of commencing civil actions for damages arising from construction of improvements to real property," recites the subject in rather general terms, as it may do. The central question is: Does the title put a person on notice of a germane subject in the body of a statute? "When the title is general, as it may be, all persons interested are put upon inquiry as to anything in the body of the act which is germane to the subject expressed[.]" *Metropolitan Casualty Ins. Co. v. Basford,* 31 S.D. 149, 161, 139 N.W. 795, 799 (1913). The instant title expresses the subject of the statute, a limitation on time of commencing civil actions. The only limitation contained in the statute is the class of cases arising from the construction of improvements to real property. · Very properly it does not, in any manner, refer to when the period of limitations shall run, nor the length of the period of limitations.

What then of McMacken's argument that what appears on its face to be a traditional statute of limitations is in fact a statute of abrogation? First, too much emphasis is placed on "traditional." Nowhere in the chapter on limitations does the word traditional appear. More importantly, the very first section of the chapter provides, "Civil actions can only be commenced within the periods prescribed in this title after the cause of action shall have accrued *except where in special cases a different limitation is prescribed by statute.*" SDCL 15–2–1. (Emphasis added.) Thus, we are informed that the legislature may, in special cases, prescribe a limitation different than a period after the cause of action shall have accrued. It appears to us that the law in question embodies such a special case.

The statute must be read in conjunction with other statutes of limitation. It does not create a new six-year statute of limitations as to a cause of action for personal injuries accruing prior to the expiration of the sixth year after completion. The three-year statute of limitations for personal injuries, SDCL 15–2–14, is still applicable, so far as, it is not limited by the abrogation provisions of the statute. A cause of action that accrues within the first three years after substantial completion must be commenced within the three-year statute. A cause of action that accrues in the fourth and fifth years must be commenced before the attachment of the abrogation provision and a cause of action accruing in the sixth year must be commenced within one year of accrual and in no event later than seven years from substantial completion.

Having examined all aspects of appellant's constitutional challenge, we conclude that the decision of the trial court should be affirmed.

WOLLMAN, C. J., and FOSHEIM, J., concur.

DUNN and HENDERSON, JJ., dissent.

DUNN, Justice (dissenting).

I dissent.

I am convinced that SDCL 15–2–9 is not a statute of limitations. Statutes of limitation proceed on the theory that a plaintiff has a full opportunity to try his rights in the courts within certain time limits. This statute bars all recovery without allowing any time for the commencement of an action, if the action accrues six years following the completion of a building. No action by a plaintiff can remedy the situation.

Thus, the plaintiff has been denied the full opportunity to pursue her rights in the courts by this statute, and this runs afoul of state and federal constitutional provisions giving every person the right to remedy wrongs in the courts. U.S.Const. art. 14, § 1 and S.D.Const. art. VI, § 20.

HENDERSON, Justice (dissenting).

The statute in question is not a statute of limitations; it is a statute of nullification which rends the very soul of tort law: the allowance of an innocent injured to recoup damages from a negligent party. Once again, the majority has placed a brick in that ever-towering wall which prevents a party from receiving an adequate award for damages. *See Kephart v. Backhaus*, 312 N.W.2d 473 (S.D.1981) (Henderson, J., dissenting). I would thus hold that SDCL 15–2–9 fails to pass constitutional muster as it is violative of due process.

Basically, the underlying rationale for striking down the type of statute herein involved is obvious: constitutional mandates preclude any manifest usurpations of a plaintiff's right of redress, that is, access to the courts. *See Battilla v. Allis Chalmers Manufacturing Company*, 392 So.2d 874 (Fla.1980); *Overland Construction Company, Inc. v. Sirmons*, 369 So.2d 572 (Fla. 1979); *Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980).

The United States Constitution art. 14, § 1 provides, inter alia: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." South Dakota Constitution art. VI, § 2 provides: "No person shall be deprived of life, liberty or property without due process of law." South Dakota Constitution art. VI, § 20 provides: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." Here, the legislation in question shuts the courtroom door for redress of an injury; it does not keep it open for a remedy by due course of law. Appellant's privilege to bring suit for a wrong is being abridged; she is being deprived of her property (damages) without due process of law. SDCL 21–1–1 states: "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages. Detriment is a loss or harm suffered in person or property." A vested cause of action is a property right. *United States v. Standard Oil Co. of California*, 21 F.Supp. 645 (S.D. Cal.1937) aff'd., 107 F.2d 402 (9th Cir. 1939). "It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts." *Wilson v. Iseminger*, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804, 807 (1902).

Appellant is also being denied equal protection of the laws. Writing for this Court in *Matter of Certain Territorial Electric Boundaries, Etc.*, 281 N.W.2d 65, 70 (S.D. 1979), Justice Fosheim expressed:

> The grant of special or exclusive privileges for private benefit is within the prohibition of the constitution. Grants of special or exclusive privileges, even those that are essentially monopolistic in character, are not, however, forbidden, where the primary purpose of the grant is the promotion of the public interest and not the private benefit of the grantees.

Surely, the absolute immunity granted unto these professionals is a private benefit at the expense of the public. Appellees are

granted immunity as a special class. Very recently, in *McClanahan v. American Gilsonite Company*, 494 F.Supp. 1334 (D.Colo. 1980), applying Colorado law, the United States District Court for the District of Colorado declared the Colorado "property improvement" statute unconstitutional because, inter alia, the statute created a classification bearing no reasonable relation to the purpose of the legislation and granted immunity to certain classes of defendants. Appellees, in this case, are given a special shield. This shield, however, cannot withstand constitutional attack for it constitutes a barrier to equal justice under the law. A constitutional challenge to a statute comparable to the one under examination here was recognized by the Illinois Supreme Court in *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588 (1967), the theory being that architects and contractors should not be granted special immunity. By its terms, SDCL 15–2–9 is relegating appellant to an inferior class of citizenship. This is an intolerable wrong.

A statute which prohibits a party the opportunity to recoup his damages solely on the basis that the injury occurred at a certain point in time subsequent to the design and/or construction of building is, in my opinion, not a statute of limitations but rather is an unconstitutional abolishment of a legal right. I quote from Comment, Limitation of Action Statutes for Architects and Builders—Blueprints for Non-Action, 18 Cath.L.Rev. 361 (1968–1969) (footnotes omitted):

In barring actions which have yet to accrue, these statutes are unique, since a statute of limitations proceeds on the theory that a right of action exists, with the limitation defining the period for pursuit of judicial redress. For a statute to bar an action which has not accrued is anomalous; such a statute does not merely limit the remedy, but bars the right of action from ever coming into existence.

. . . .

While ostensibly statutes of limitations, they function to limit actions in only certain instances, if at all. The form of the limitation of actions statutes is utilized to abolish a right altogether.

. . . .

[U]sing a limitation [statute] to abolish a right altogether only serves to devitalize the theory, the policies, and the law of limitation of actions.

I am in total agreement with these observations.

I pose this question: How can a plaintiff be prevented from bringing a cause of action due to the passage of time prior to that action accruing? As stated in *Lamb v. Powder River Live Stock Co.*, 132 F. 434 (8th Cir. 1904), the answer to this query is that it cannot, not without violating basic constitutional guarantees. Death cannot occur without there first being conception, nor dusk come without daylight. Neither can a cause of action expire before it accrues. Appellant has not slept on her rights. Her opportunity for access to the courts is stripped. It has been held that the federal constitution requires this opportunity to be granted at a meaningful time and in a meaningful manner. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Legal analyses which, in essence, go through extensive mental gymnastics to conclude that the abolition of a legal right is not necessarily abhorrent to a legitimate legislative objective, are, in my opinion, strained efforts to circumvent the blatantly inequitable nature of these types of laws. *See Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929); *Freezer Storage, Inc. v. Armstrong Cork Company*, 476 Pa. 270, 382 A.2d 715 (1978). The rationale of these cases is unpersuasive when compared to the constitutional principles they negate.

Finally, though the burden is upon appellant to establish the unconstitutionality of SDCL 15–2–9, and confessedly a heavy burden, it is not impossible. We on this Court, mindful of the great doctrine of separation of powers, owe a duty to strike down legislative acts which are repugnant to the state constitution and thereby preserve unto our citizenry the blessings of a free people through an open, and not closed, courtroom door.