**Barbara VAN DEN HUL, Special Administratrix of the Estate of Ralph Van Den Hul, Deceased, Appellant,**

v.

**BALTIC FARMERS ELEVATOR COMPANY, a South Dakota cooperative association; The Baltic Cooperative Building Supply Association, a South Dakota cooperative association; Koopman & Sons Gas Company, Inc., a South Dakota corporation; and Crane Company, an Illinois corporation, Appellees.**

**Mick ANDERSON, Appellant,**

v.

**BALTIC FARMERS ELEVATOR COMPANY, a South Dakota cooperative association; The Baltic Cooperative Building Supply Association, a South Dakota cooperative association; Koopman & Sons Gas Company, Inc., a South Dakota corporation; and Crane Company, an Illinois corporation, Appellees.**

Nos. 82–2455, 82–2456.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1983.

Decided August 30, 1983.

Rehearing Denied Oct. 6, 1983.

Edward J. Leahy, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for Baltic Co-op. Bldg. Supply Ass'n.

John E. Simko, Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., for Koopman & Sons Gas Co., Inc.

Stanley E. Siegel, Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, S.D. and Joel Hagen and Karen Schreier, Burns, Hagen & Wilka, Sioux Falls, S.D., for appellant Barbara Van Den Hul.

Thomas Frankman, Willy, Pruitt, Matthews, Farrell, Frankman & Johnson, Sioux Falls, S.D., for appellant Mick Anderson.

Terry Prendergast, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S.D., of counsel to appellants on brief only.

Before HEANEY, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

HEANEY, Circuit Judge.

On May 28, 1980, Ralph Van Den Hul and Mick Anderson were painting at the Baltic Farmers Cooperative Elevator (Baltic Ele-

vator) in Baltic, South Dakota, when an explosion ripped through the elevator. Van Den Hul was killed, and Anderson was severely burned. Barbara Van Den Hul, special administratrix of the estate of Ralph Van Den Hul, and Anderson brought wrongful death and personal injury actions respectively, naming multiple defendants. The district court dismissed three of the defendants and entered final judgment as to them pursuant to Fed.R.Civ.P. 54(d). Van Den Hul and Anderson appeal. We affirm in part and reverse in part.

## I.

### FACTS

The complaints alleged that the explosion was caused by the ignition of accumulated propane gas which occurred as a result of premature corrosion of a one-inch underground pipe laid under a street near the elevator basement in October, 1970. The pipe carried liquified petroleum (LP) gas from a tank installed on one side of the street to a grain dryer on the other side of the street. The pipe was allegedly laid in actively corrosive soil but unprotected from corrosion by an acceptable technique. The defendants included, in addition to Baltic Elevator and others, the Baltic Cooperative Building Supply Association (the Co-op), the Crane Company (Crane), and Koopman & Sons Gas Company (Koopman). Crane supplied the pipe, the Co-op installed it, and Koopman connected an LP gas tank to the line and supplied the LP gas to Baltic Elevator.

The district court granted summary judgment on the ground that SDCL 15–2–9 barred the action against the Co-op and partially against Koopman, that SDCL 15–2–12.1 barred the action against Crane, and that the facts showed no right to relief against Koopman.

## II.

### STATUTES OF LIMITATIONS

SDCL 15–2–9 and 15–2–12.1 were enacted to protect architects, builders, and suppliers of products from long-term liability upon claims arising out of improvements to real property. *McMacken v. State*, 320 N.W.2d 131, 133 (S.D.), *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982). SDCL 15–2–9 provides in pertinent part that

[n]o action to recover damages * * * for personal injury or death arising out of any deficiency in the design, * * * or construction, of an improvement to real property, * * * may be brought against any person performing or furnishing the design, * * * or construction, of such an improvement more than six years after substantial completion of such construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended..

Prior to its amendment in 1978, the statute imposed a ten-year limitation.

SDCL 15–2–12.1 provides:

**Product liability actions barred after six years from delivery of product.** In the application of any statute of limitations to a cause of action against a manufacturer, lessor or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, inspection, preparation, assembly, testing, packaging, labeling, or sale of any product or failure to warn or protect against a danger or hazard in the use, misuse or unintended use of any product, or the failure to provide proper instructions for the use of any product, the cause of action shall be barred if it accrues more than six years after the date of the delivery of the completed product to its first purchaser or lessee who was not engaged in the business of selling such product, regardless of the date the defect in the product was or should have been discovered. This section shall not apply to causes of action which have arisen prior to July 1, 1978.

The appellants assert that these statutes are unconstitutional, that they were improperly applied retroactively, that factual issues exist as to the validity of application of SDCL 15–2–9, and that the injuries occurred as a result of defendants' violation of South Dakota safety statutes which must be considered outside the class of actions to which the statutes of limitations are applicable.

A. Fact issues.

We discuss first appellants' contention that whether the installation of the underground pipe in 1970 constituted an improvement within the meaning of SDCL 15–2–9 was a genuine issue of material fact, precluding the grant of summary judgment.

SDCL 15–2–9's six-year period of limitations begins to run upon substantial completion of construction of an improvement. The date of substantial completion is defined as the date "when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended." The appellants contend that a jury could find that the underground pipe was not, by itself, an improvement, and did not become one until it was hooked up to a grain dryer in 1975. The appellees contend that the undisputed facts show that the pipeline was installed for the purpose of providing an alternative source of fuel for the grain dryer owned by Baltic Elevator, that the installation of the pipeline involved the expenditure of labor and money, and that the pipeline enhanced the use and value of the elevator. They contend that, upon these facts, the pipeline as a matter of law constituted a substantially completed improvement.

The Supreme Court of South Dakota has not construed the term "improvement" as used in SDCL 15–2–9. In the absence of a controlling state decision, it is our duty to apply the rule we believe the state's courts would follow. *Luster v. Retail Credit Co.,* 575 F.2d 609, 613 (8th Cir.1978); 19 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4507, at 100–102 (1982).

■ Generally, in determining whether a modification of or addition to real property is an improvement, courts have adopted a commonsense interpretation of the word "improvement." *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977). *See generally* Note, *Actions Arising Out of Improvements to Real Property: Special Statutes of Limitations,* 57 N.D.L.Rev. 43, 45–47 (1981). Among the factors considered are whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property, and is permanent in nature. *Southland Corp. v. United States,* 222 Ct.Cl. 22, 611 F.2d 348, 353 (Ct.Cl.1979); *Allentown Plaza Assoc. v. Suburban Propane Gas Corp.,* 43 Md.App. 337, 405 A.2d 326, 332 (1979); *Washington Natural Gas Co. v. Tyee Constr. Co.,* 26 Wash.App. 235, 611 P.2d 1378, 1381 (1980); *Mora-San Miguel Electric Cooperative, Inc. v. Hicks & Ragland, etc.,* 93 N.M. 175, 598 P.2d 218, 220 (1979); *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454, 456–457 (1975).

■ The installation of the underground pipe enhanced the use and value of the property, was permanent, and involved the expenditure of labor and money. Thus, we believe that the South Dakota courts would adopt the commonsense definition described above and would determine on the basis of the undisputed facts that, as a matter of law, the pipeline was an improvement within the meaning of SDCL 15–2–9. We are also convinced that they would determine that the pipeline was substantially completed within the meaning of the statute in 1970.[1] The pipeline could have been hooked

---

1. Only the 1970 installation of the underground pipe is in issue here. Our holding does not preclude the possibility that the actions are timely with regard to later improvements. In

May, 1974, defendant Koopman delivered a rental LP tank and connected the tank to the one-inch line. It is unclear from the evidence at this point exactly when or by whom the pipe

up in 1970. SDCL 15–2–9 only requires that construction be sufficiently completed so that the owner *can* use the improvement, not that the owner actually use it.

B. Retroactivity.

■ SDCL 15–2–9 imposed a ten-year period of limitations until 1978, when the period was reduced to six years. SDCL 15–2–12.1, which protects the seller of the piping used in the 1970 improvement and which also imposes a six-year period of limitations, was enacted in 1978. The appellants contend that application of these statutes to installation of an improvement and to delivery of materials used in that improvement prior to the statutes' effective date in 1978 constitutes an impermissible retroactive application.[2]

In *Kotval v. Gridley,* 698 F.2d 344, 347 (8th Cir.1983), we considered the prospective application of a newly enacted statute of limitations under South Dakota law and held that South Dakota would support the majority view that a prospectively applied statute governs

> only causes of action arising after the effective date of the new limitations period; claims accruing prior to the effective date but sued upon after such date are controlled by the limitations period in force on the date the cause of action accrued.

Here, the causes of action did not accrue until after the effective date of the statutes; application of those statutes under the standard defined in *Kotval* therefore would be prospective. In *Kotval,* unlike here, however, the causes of action had accrued prior to the enactment of the amended, shorter statute of limitations; as

a consequence, we did not consider the special category of cases where the events laying the groundwork for an injury occurred before the statute of limitations was amended, but the actual injury, and accrual of the cause of action, occurred after amendment of the statute of limitations. The question is whether a different standard should be applied to this special category.

The appellants argue in the affirmative. They cite *State v. Wrestling,* 81 S.D. 34, 130 N.W.2d 109, 111 (1964), which cited the following excerpt from 82 C.J.S. Statutes § 412 with approval:

> A retroactive or retrospective law, in the legal sense, is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past. [Footnote omitted.]

They attach significance to the phrase "attaches a new disability in respect of transactions already past," construing that phrase as applicable to the factual situation present here.

We reject the appellants' theory. We are not dealing with the attachment of disability here, but with the underlying question of whether a right will be taken away by application of the 1978 statute. In *State v. Wrestling, supra,* 130 N.W.2d at 111, the Supreme Court of South Dakota invalidated application of an ordinance allowing a municipality or its electors to rescind a vote authorizing a bond issue. The ordinance was enacted subsequent to an election in which voters authorized a bond issue; prior

---

was connected to the grain dryer. It is questionable whether the connection of the rental LP tank to the pipeline should be labeled an improvement. *See, e.g., Southland Corp. v. United States,* 222 Ct.Cl. 22, 611 F.2d 348, 353 (Ct.Cl.1979); *Allentown Plaza Assoc. v. Suburban Propane Gas Corp.,* 43 Md.App. 337, 405 A.2d 326, 332 (1979). However, the installation of the grain dryer and its hookup to the pipeline would constitute a separate improvement independent of and in addition to the installation of the pipeline.

2. Under South Dakota law, statutes are to be construed as having only a prospective operation unless the intention of the legislature is to give them retrospective effect and that intention clearly appears. *In re Scott's Estate,* 81 S.D. 231, 133 N.W.2d 1, 2–3 (1965); *In re Sandler's Estate,* 73 S.D. 56, 38 N.W.2d 879, 883 (1949). SDCL 15–2–12.1 by its terms applies only prospectively. SDCL 15–2–9 also applies only prospectively, because the statute gives no indication that the legislature intended otherwise.

to the statute's enactment, such a vote was nonrescindable. The court held that application of the ordinance would be an impermissible retroactive application, because the election conferred a substantive right on the municipality and its electors which could not be taken away. The key factor was whether the law in question would take away an acquired right.[3]

■ Here, the right affected by the statutes is the right to sue; that right did not arise or accrue[4] until the injury occurred. Therefore, application of the six-year statutes of limitations here does not constitute a retroactive application. *Accord Mora-San Miguel Electric Cooperative, Inc. v. Hicks & Ragland, etc., supra,* 598 P.2d at 220. *But see Dawson v. Newkirk,* 444 N.E.2d 66, 68 (Ohio App.1981) (medical malpractice; court held that vested right to sue accrued on day of surgery, so that even though cause of action did not accrue until day alleged negligence was discovered, application of a statute of limitations enacted subsequent to the surgery would be an impermissible retrospective application); *United States Fire Insurance Co. v. E.D. Wesley Co.,* 105 Wis.2d 305, 313 N.W.2d 833, 839–840 (1982) (statute construed under similar facts as inapplicable, on grounds of impermissible retroactivity, to avoid constitutional problems).

## C. Constitutionality.

The appellants contend that SDCL 15–2–9 and 15–2–12.1 are unconstitutional because they deny equal protection, due process, and access to the courts, and because they violate Article III, § 21 of the South Dakota Constitution.

### 1. Equal Protection.

Equal protection challenges to special statutes of limitations protecting builders and architects and other classes have been frequently asserted. *See, e.g.,* Knapp and Lee, *Application of Special Statutes of Limitations Concerning Design and Construction,* 23 St.L.U.L.J. 351, 364–366 (1979) (and cases cited therein); Note, *Actions Arising Out of Improvements to Real Property: Special Statutes of Limitations, supra,* 57 N.D.L.Rev. at 58–63 (and cases cited therein). Argument is most frequently made that such statutes give special immunity to builders and architects in an arbitrary fashion, discriminating against owners of buildings, suppliers of materials used in construction, and others. The South Dakota Supreme Court rejected such a challenge in *McMacken v. State, supra,* 320 N.W.2d at 133–136, in part because of its determination that it is " 'rational to adjust time periods for liability for acts performed according to the substantive scope of the liability involved.' " *Id.* at 135, *quoting from Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715, 718 (1978). The court in *McMacken* adopted the *Freezer Storage* analysis of the differing scope of liability of builders and owners as a rational basis upon which to limit a builder's liability.

**3.** As stated in 82 C.J.S. Statutes § 412, in the sentence immediately following that cited with approval in the *Wrestling* case:

However, a statute does not operate retroactively merely because it relates to antecedent events, or because part of the requisites of its action is drawn from time antecedent to its passing, but is retroactive only when it is applied to rights acquired prior to its enactment. [Footnotes omitted.]

**4.** The appellants attach significance to the use of the words "accrue" and "arise" in SDCL 15–2–12.1. The statute provides that a cause of action shall be barred if it *accrues* after a certain time; it also provides that the section shall not apply to causes of action which have *arisen* prior to July 1, 1978. The appellants argue that the cause of action *arose* when the pipe was delivered without warnings, labeling or protection against corrosion, and that the cause of action *accrued* when the injuries at issue here occurred. It is true that in certain contexts, the words "accrue" and "arise" have significantly different meanings. *See, e.g., Roques v. Continental Casualty Co.,* 17 La.App. 465, 135 So. 51 (1931) (terms used in bond contract); *Moran v. Moran,* 144 Iowa 451, 123 N.W. 202 (1909). However, we find no support for the interpretation of SDCL 15–2–12.1 proposed by the appellants here and conclude that the words "arise" and "accrue" as applied to this factual situation may be considered interchangeable.

The appellants assert a twofold equal protection claim: (1) that the statutes create an arbitrary classification of plaintiffs harmed within six years of substantial completion of an improvement to real property and plaintiffs harmed more than six years after such substantial completion; and (2) that as to defendant Crane, SDCL 15–2–12.1 creates an arbitrary classification in shielding manufacturers of durable goods as opposed to manufacturers of nondurable goods. We reject both claims.

■ The claims before us involve neither a suspect classification nor infringement upon a fundamental right so as to require strict scrutiny. Nor is the heightened scrutiny test appropriate. *Fitz v. Dolyak,* 712 F.2d 330 at 332 (8th Cir.1983). The standard of review is whether there is a rational basis for the classifications. *Id.* In *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981), the Supreme Court described the rational basis test as requiring "that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." In *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981), the Court stated that

[i]n determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) Does the challenged legislation have a legitimate purpose?, and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose? [Citations omitted.]

a. Six-year limitation.

■ The classification at issue is one based on time. The appellants contest South Dakota's choice of a six-year period to limit the class of plaintiffs which may

sue. Resolution of this issue in part hinges on the *McMacken* court's implicit holding that the protection of builders and architects against the assertion of stale claims was a legitimate legislative objective. We believe that the six-year period is rationally related to the legislature's legitimate objective of barring stale claims and that it was reasonable for the legislature to believe that most of such claims could be asserted in that six-year period. As the court stated in *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 521 (Mass.1982), where the plaintiff asserted a due process challenge to a similar statute of limitations,

[i]n establishing the six-year limit, the Legislature struck what is considered to be a reasonable balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those involved in construction. The Legislature could reasonably have concluded that a period of six years allows sufficient time for the most meritorious claims to accrue.

*Accord Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 825–826 (Colo.1983) (ten-year period).

b. Durable v. nondurable goods.

■ The appellants assert that in protecting defendant Crane, SDCL 15–2–12.1 denies equal protection to that class of manufacturers of nondurable goods whose products are most likely to deteriorate within the six-year period and who thus are more vulnerable to liability. Assuming the appellants have standing to assert this equal protection challenge,[5] we find it to be without merit. Inclusion of materialmen under the umbrella of protection afforded by the special statutes of limitations has a rational basis. *See, e.g., Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918, 920 (1970), *appeal dismissed,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971). Furthermore, the im-

---

5. The courts are divided on the question of whether a plaintiff attacking a statute of limitations such as at issue here may assert an equal protection challenge based upon disparate treatment of classes of defendants. *Compare Adair v. Koppers Co.,* 541 F.Supp. 1120, 1129–1130 (N.D.Ohio 1982) (no standing) and *McClanahan v. American Gilsonite Co.,* 494 F.Supp. 1334, 1342–1344 (D.Colo.1980); *Cudahy Co. v. Ragnar Benson, Inc.,* 514 F.Supp. 1212, 1216 (D.Colo.1981); *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 523 (1982) (standing).

position of a six-year period of limitations is rationally related to achievement of the prevention of stale claims.[6]

### 2. Due Process, and Open Courts Violations.

The appellants contend that application of SDCL 15–2–9 and 15–2–12.1 denies them the right to seek redress of "wrongs as recognized by the law of the land" in violation of Article VI, § 20 of the South Dakota Constitution. They also allege violation of the due process clauses of the South Dakota and United States Constitutions.

#### a. Open court violations.

■ Article VI, § 20 of the South Dakota Constitution provides:

All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.

In *McMacken v. State, supra,* 320 N.W.2d at 138, the South Dakota Supreme Court reaffirmed its holding that Article VI, § 20 guarantees that the court will be open for "such wrongs as are recognized by the law of the land," citing *Simons v. Kidd,* 73 S.D. 41, 38 N.W.2d 883, 886 (1949), and that "[w]here no right of action is given, * * * or no remedy exists, under either the common law or some statute, [Article VI, § 20] * * * create[s] none." *Id.* It held that the South Dakota legislature's enactment of SDCL 15–2–9 had the effect of a statutory abrogation of a cause of action before its accrual and that such abrogation did not violate Article VI, § 20 of the South Dakota Constitution.

The appellants attempt to distinguish this case on the basis that their cause of action is not based simply on a common law negligence theory, but on violation of South Dakota safety statutes, which they assert is

a wrong recognized by the law of the land. We find this distinction to be without merit. The effect of enactment of SDCL 15–2–9 and 15–2–12.1 was the abrogation of appellants' causes of action before they accrued. Therefore, any wrongs done to appellants were not recognized as wrongs by the law of the land.

#### b. Due process.

■ The abrogation of appellants' causes of action likewise does not violate the due process clause of the South Dakota Constitution. The South Dakota Supreme Court in *McMacken v. State, supra,* 320 N.W.2d at 136–138, specifically rejected such a constitutional challenge with regard to SDCL 15–2–9. It is clear that it would similarly reject a due process challenge to SDCL 15–2–12.1.

We likewise reject appellants' federal constitutional due process claims and their access to the courts claim. In *Jewson v. Mayo Clinic,* 691 F.2d 405, 411–412 (8th Cir.1982), and *Fitz v. Dolyak, supra,* 712 F.2d at 333, we rejected similar due process arguments, and most courts have rejected the due process claims asserted here. *See, e.g., Adair v. Koppers Co.,* 541 F.Supp. 1120, 1128 (N.D. Ohio 1982); *Yarbro v. Hilton Hotels Corp., supra,* 655 P.2d at 826–827; *Carter v. Hartenstein, supra,* 455 S.W.2d at 920; *Klein v. Catalano, supra,* 437 N.E.2d at 522; *Freezer Storage, Inc. v. Armstrong Cork Co., supra,* 382 A.2d at 720–721.

### 2. Article III, § 21 of the South Dakota Constitution.

Article III, § 21 of the South Dakota Constitution mandates that "no law shall embrace more than one subject, which shall be expressed in its title." SDCL 15–2–9 is entitled "Limitations of action for deficiencies in construction of buildings." The appellants contend that the subject of SDCL

---

**6.** The appellants also contend that the statutes violate Article III, § 23 of the South Dakota Constitution, which prohibits the legislature from enacting special laws granting "an individual association or corporation any special or exclusive privilege, immunity, or franchise

whatever." The Supreme Court of South Dakota rejected this assertion in *McMacken v. State,* 320 N.W.2d 131, 136 (S.D.), *aff'd on rehearing,* 325 N.W.2d 60 (S.D.1982). We have no basis upon which to disagree with that holding.

15–2–9 is the limitation of actions related to improvements to real property, a broader category of cases, that the subject is not expressed in the title, and that the statute therefore violates Article III, § 21 of the South Dakota Constitution and should be declared invalid.

In *McMacken v. State, supra,* 320 N.W.2d at 138–139, the Supreme Court of South Dakota held that Article III, § 21

creates two mandates. The first is that no law shall embrace more than one subject, * * * and all provisions of the Act must relate directly to the same subject, have a natural connection, and not be foreign to the subject as stated in the title. The second mandate is that the subject shall be expressed in the title. [Citation omitted.]

It described the purposes of the constitutional provision as threefold: (1) the prevention of the practice of combining unrelated measures because of the vote-getting ability of one of them; (2) the prevention of unintentional and unknowing passage of provisions inserted in a bill; and (3) prevention of fraud or deception of the public as to matters contained in a bill, and the giving of fair notice to the public as to matters contained in a bill. *Id.*

The court in *McMacken* described the subject of SDCL 15–2–9 before its 1978 amendment to be "the limitation on the right to commence an action for damages in a specified class of cases."[7] *Id.* at 139. The court's discussion makes it clear that the key element in this description is the limitation on the time of commencing a civil action. The 1978 amendment did not alter this key element. All of the provisions of 15–2–9 relate to this key element

and have a natural connection with it. Furthermore, none of the dangers which Article III, § 21 is meant to counteract is present here. To argue that, because the title includes the word "buildings" while the text of the statute refers to "improvements to real property," the statute is unconstitutional, is to argue that Article III, § 21 requires that the title fully index the contents of the statute. Such is not the state of South Dakota law. *See Clem v. City of Yankton,* 83 S.D. 386, 160 N.W.2d 125, 132 (1968); *Garrey v. Schnider,* 78 S.D. 596, 105 N.W.2d 860, 863–864 (1960).

**D. Violation of Safety Statutes and Fraudulent Concealment as Exception to Statutes of Limitations.**

The appellants allege that the defendants violated SDCL 34–39–10, a safety statute, and regulations thereunder. They argue that such violation is an exception to the statutes of limitations either as a policy matter or as an instance of fraudulent concealment. These issues were not considered by the court in *McMacken,* and it is not clear to this Court that either of these issues was considered by the district court. We have some doubt as to the merits of both arguments.[8] However, because they have not previously been ruled upon, the district court shall consider them on remand.

### III.

### PROPRIETY OF SUMMARY JUDGMENT AS TO KOOPMAN

Finally, we address appellants' contention that summary judgment as to Koopman was improperly granted on the ground that

---

**7.** The title to SDCL 15–2–9 prior to its 1978 amendment was "An Act relating to the limitation on time of commencing civil actions for damages arising from the construction of improvements to real property."

**8.** We observe that the South Dakota Supreme Court adheres to the principle that courts are reluctant to create implied exceptions to statutes of limitations. *Hinkle v. Hargens,* 76 S.D. 520, 81 N.W.2d 888, 890 (1957). The appellants' fraudulent concealment claim is that a

fiduciary relationship between the appellees and the public was created by the safety statutes, that the relationship required disclosure of the defects, and that silence alone amounted to fraudulent concealment. There are several troublesome issues raised by appellants' claim, including whether a fiduciary relationship exists; whether, if so, the appellees had a duty to disclose the defects in question; and whether the appellees must have had actual knowledge of the defects.

the facts viewed most favorably to the appellants did not constitute a cause of action.

The appellants allege that an examination of Koopman's records reveals the following facts: Koopman supplied LP gas to Baltic Elevator from 1972 to 1980. From December, 1972, to September, 1979, Koopman delivered a total of 6,112 gallons of LP gas in the months December through August. During the time period for which records were furnished, delivery of LP gas averaged 113 gallons per month. From December, 1979, through May, 1980, however, Koopman delivered 9,160 gallons, an average of over 1,500 gallons per month.

The appellants allege, *inter alia*, that deliveries of fifteen times more gas than previously delivered should have put Koopman on notice that there might be a defect in the system. They allege that Koopman, as a supplier of LP gas, violated a continuous duty to the elevator and the public imposed by ARSD 61:12:01:03 to investigate when in possession of facts that would suggest to a prudent person that an appliance of the customer is leaking or is otherwise unsafe for the transportation of gas. They cite, *inter alia, Simpson v. Skelly Oil Co.,* 371 F.2d 563, 567 (8th Cir.1967), and *Bellefuil v. Willmar Gas Co.,* 243 Minn. 123, 66 N.W.2d 779, 783 (1954).

Koopman concedes that a distributor of gas has certain obligations with respect to safety of a pipeline, but argues that those obligations arise only upon actual notice from the customer of a defect, citing *Skelly Oil Co. v. Holloway,* 171 F.2d 670 (8th Cir. 1948).

The duty of a gas distributor under these circumstances has not been defined by the South Dakota courts. However, in an earlier case, we discussed the law developed in surrounding states on this question. We hold that the South Dakota Supreme Court would probably adopt our definition of that duty set forth in our earlier case, *Simpson v. Skelly Oil Co., supra,* 371 F.2d at 567–568, as follows:

[W]henever a gas company is in possession of facts that would suggest to a person of ordinary care and prudence that an appliance of a customer is leaking or is otherwise unsafe for the transportation of gas, the company has the duty to investigate, as a person of ordinary care and prudence similarly situated and handling such a dangerous substance would do, before it continues to furnish additional gas. The duty to exercise reasonable diligence to inspect or shut off the gas supply is measured by the likelihood of the injury and only arises upon a reasonable notice of the existence of danger. [Footnote omitted.]

Notice may be actual or constructive. *See, e.g., Bellefuil v. Willmar Gas Co., supra,* 66 N.W.2d at 783–784.

Given the dramatic increase in the amount of LP gas delivered from December, 1979, through May, 1980, given the undisputed fact that industry standards required that below-ground pipes be externally protected from corrosion, and given Koopman's admission that it knew there was no corrosion-resistant coating on that portion of the pipe which extended above the ground, we think it is clear that whether Koopman had constructive notice of the defect is a genuine issue of material fact, and that therefore the district court erred in granting Koopman's motion for summary judgment.

We reverse and remand for proceedings consistent with this opinion. All costs other than those relating to Koopman's claim will be taxed to the appellants equally. Those relating to Koopman will be taxed to Koopman & Sons Gas Company.